McHOSE et al. v. EARNSHAW.

(Circuit Court of Appeals, Third Circuit. April 17, 1893.)

1. ACTION FOR PRICE OF GOODS—OCEAN FREIGHT—REMISSION OF STEVEDORE CHARGES.

The owner of foreign ore sold a portion thereof to defendants under an agreement which contained this clause: "Freight rate. The above prices [for the ore] are based on an ocean freight rate of 12 shillings per ton. All freight over 12 shillings to be added to the invoice as part of the price of the ore, and all freight under 12 shillings to be deducted from the invoice." *Held*, in an action to recover the price of part of the ores, that defendants were not entitled to the benefit of a rebate on unloading which plaintiff received from the stevedores as a commission for procuring them the job, the same not being a reduction of ocean freight. 48 Fed. Rep. 589, affirmed.

2. SAME—FALSE REPRESENTATIONS—MEASURE OF DAMAGES.

Defendants were induced to enter into the contract for the ores by plaintiff's false statements, but accepted the ores after discovering the falsity of the statements. *Held*, that the true measure of damages for the deceit was the difference between the contract price of the ore and its value in the market at the time, unaffected by the false representation, and not such sum as the jury might find from all the evidence was the value of the ores to defendants. Peek v. Derry, 37 Ch. Div. 541, and Smith v. Bolles, 10 Sup. Ct. Rep. 39, 132 U. S. 125, distinguished.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

At Law. Assumpsit by Alfred Earnshaw against Isaac McHose and others, trading as Isaac McHose & Sons, to recover the price of goods sold and delivered. There was a verdict for plaintiff, and motions to increase and diminish the same were subsequently made and denied. 48 Fed. Rep. 589. From the judgment entered on the verdict, defendants bring error. Affirmed.

F. P. Prichard and John G. Johnson, for plaintiffs in error.
R. C. McMurtrie, for defendant in error.

Before DALLAS, Circuit Judge, and WALES and GREEN, District Judges.

DALLAS, Circuit Judge. This was an action of assumpsit by the defendant in error against the plaintiffs in error, upon a written contract dated January 29, 1890, by which the defendant sold to the plaintiffs certain ore, at prices named, to be shipped in as nearly equal monthly proportions as possible, and to be delivered free on board vessels at Philadelphia. The contract recited that the defendant had purchased from the Marabello Iron Ore Company the total output of their mines for the 12 months commencing March 1, 1890, and the sale to the plaintiffs was of one third of that ore. The contract contained this clause:

"Freight rate. The above prices [for the ore] are based on an ocean freight rate of twelve shillings per ton. All freight over twelve shillings to be added to the invoice as part of the price of the ore, and all freight under twelve shillings to be deducted from the invoice."

Several cargoes were delivered and paid for, but others, subsequently delivered, were not paid for, and to recover a balance

thence arising, of $56,807.32, this action was brought. Two (among other) defenses were set up—First, that the stevedores had unloaded a considerable part of the ore for 35 cents per ton, but had returned 10 cents per ton thereof to the defendant, who had not applied the sum so returned ($4,096.10) in reduction of freight under the "freight-rate" clause of the contract; second, that the defendant had made a false and fraudulent representation of a material fact, which was intended to, and did, induce the plaintiffs to make the contract. This brief and incomplete statement of the case is sufficient for the present purpose. The arguments of counsel have been confined to two questions, which will be separately considered.

1. That the defendant received from the stevedores $4,096.10 under the circumstances which have been mentioned, and that, if the sum so received should have been applied in reduction of freight, the plaintiffs were entitled to a corresponding deduction from the defendant's claim, was admitted. There was no allegation of fraud in this particular transaction. The point made was, and is, solely as to the true construction of the freight-rate clause of the contract. The defendant contended, and now insists, that this money was properly paid to and received by him as "commission allowed by stevedores" for his services in procuring them the job of unloading cargo, and was not a reduction of the "ocean freight." If this view of the matter is the correct one, then, in the absence of any charge of fraud in connection with it, the plain language of the contract determines the question. The learned judge who presided at the trial instructed the jury that the contractual provision, "all freight under twelve shillings to be deducted from the invoice," was not applicable to these commissions, because the service of unloading was distinct from that of ocean carriage, to which alone the provision referred; and we are of opinion that this construction of the clause, and consequent restriction of its operation, were clearly right.

2. A more important and difficult subject is now to be dealt with. The defense chiefly relied upon was that the contract of purchase was procured by fraud. Upon this point, the case was tried, and properly, precisely as if the positions of the parties upon the record had been reversed, and the action had been for deceit. The burden was upon the defendants below to show, and it is now to be assumed that they did show, that a material statement of fact had been made to them by the plaintiff below, which was untrue, and which he knew to be untrue; and that it was made with intent to induce the defendants to make the contract, who, in reliance on the statement, did make it, and thereby suffered damage. All of these elements of the actionable wrong of deceit must, we repeat, be, for the present purpose, assumed to have been established, and therefore it is not necessary to refer to the evidence which was adduced in proof of their existence. The only question is as to what loss resulted therefrom for which the defendants below were entitled to compensation in damages; and, as pertinent to this question, but a single additional fact, and that an undisputed one, need be stated. Although the defendants below believed the state-

ment to be true at the time it was made, and contracted in reliance upon it, yet they knew it to be untrue before they received any of the deliveries, and, notwithstanding that knowledge, they accepted the ore. In view of this fact, the court below held the true measure of the damages for the deceit to be "the difference between the contract price of the ore and its value in the market at the time, unaffected by the alleged false representation; that is to say, the difference between the price which the defendants contracted to pay and the price others generally would have paid in the market, in the absence of such a representation." Such was the instruction given to the jury, notwithstanding a point presented on behalf of defendants below, (which was disaffirmed) that the effect of the misrepresentation was "to annul the contract, and leave defendants liable only for the benefits which they received under it; or in other words, for such sum as the jury may find from all the evidence was the value of the goods to them." The ruling of the court was, in substance, that the defendants below were entitled to be compensated for any loss sustained from making the contract, and for such loss only, because the making of the contract, and that alone, was induced by the fraudulent falsehood; whereas the defendants below, although they admitted acceptance of the ore with knowledge of the fraud, claimed allowance of the difference between the contract price and the value to them of the ore so accepted.

Certain broadly expressed rules of the law respecting recoverable damages and the measure thereof have been long settled, and the present case, like many to be found in the books, presents no difficulty which does not arise from its special circumstances, and which is not wholly dependent for its solution upon the discriminating application of established general principles to particular facts. The principle that the damages recoverable in an action of deceit are such only as naturally and proximately result from the fraud is not open to question. Indeed, resultant damage is an essential component of the wrong. "When you have proved that the statement was false, you must further show that the plaintiff has acted upon it, and has sustained damage by so doing." Edgington v. Fitzmaurice, 29 Ch. Div. 459–482; Peek v. Derry, 37 Ch. Div. 541–551. If the fraudulently induced act and the damage be not connected as cause and effect, the injury itself is not complete, and, without injury, of course nothing can be recovered. Hence it is manifest that, in order to establish that the wrong of deceit has been committed, as well as to supply the measure of the compensation to which the person wronged is entitled, damages naturally and proximately occasioned by doing the induced act must be made to appear. Keeping this in mind, we recur to the material facts of this case. From time to time, after the making of the contract, the defendants below accepted deliveries of the ore. These acts were not constrained, but voluntary. They were not influenced by the fraud, for that had been discovered; and, as has been not only admitted but insisted on behalf of the plaintiffs in error, they retained and used the ore only because the exigencies of their business required that they should do so. They knew that they were

at liberty to reject it. That they accepted it under the stress of urgent need may be conceded; but no matter what else may have induced them to take it, it is plain that the fraud did not, and that they had no right whatever to the ore which was not derived from the contract in suit, nor at any price which that contract had not fixed. Yet the contention of the plaintiffs in error amounts to this: that they were, by reason of a fraud not then operative, entitled to keep the ore, not at any price that had ever been agreed upon, but for such sum as might be equal to its value to them. We know of no principle of law or of equity which supports this position. It certainly cannot stand upon the right of rescission. In assertion of that right the ore might have been rejected, but the fact is that it was accepted, and, of necessity, at the stipulated price; and for that price, therefore, the defendants below were properly held to be liable. For any loss which they sustained by acting upon the fraud they were, of course, entitled to allowance, and this the jury was directed to award them, under instructions as to the method of arriving at the amount thereof which accurately applied to the facts we have discussed the rule of the law to which we have referred.

It is, however, earnestly contended that our understanding on this subject conflicts with the views of the learned judges by whom the case of Peek v. Derry, 37 Ch. Div. 541, was decided; and also that the supreme court, in Smith v. Bolles, 132 U. S. 125, 10 Sup. Ct. Rep. 39, has authoritatively determined the question here involved in such manner as to require a reversal of the judgment now under review. But careful examination of the reports of these cases discloses that in neither instance is the judgment of the court to the effect supposed. On the contrary, upon scrutinizing each of them with reference to the facts upon which it was founded, it becomes quite manifest that in neither was it intended to disregard the familiar principles to which we have adverted, or to depart (and that without the expression of any such purpose) from the prior judicial decisions, both in England and in the United States, which had theretofore been accepted as settling the law in accordance with those principles.

Peek v. Derry was an action of deceit. The plaintiff had been fraudulently induced to buy certain shares, and had taken them before he discovered the fraud. Cotton, L. J. said, (37 Ch. Div. 591:)

"The damage to be recovered by the plaintiff is the loss which he sustained by acting on the representations of the defendants. That action was taking the shares."

### And, per Lopes, L. J., (page 594:)

"Any damage occurring after the discovery of the fraud, when the plaintiff might have rescinded the contract, and which would not be attributable to his acting on the misrepresentation, but to other causes, in my opinion would not be recoverable."

We cannot suppose that the judges who used this language intended either to gainsay or to renounce the rule we have heretofore stated. Indeed, we think it would be difficult to more posi-

tively affirm it, or to more distinctly indicate its applicability to the present case.

The judgment in Smith v. Bolles is binding upon this court, but it does not rule the precise point now under consideration. The plaintiff there had, in February, 1880, upon false representations, "agreed to buy" certain stock from the defendant, "which contract was completed in the month of March, 1880, by payment in full of the purchase price." The contract seems to have been treated as having been actually made in March, and the purchase and payment as having been contemporaneous; but, be this as it may, it at least did not appear that the plaintiff completed the transaction with knowledge of the fraud, and when he might have rescinded the contract. Consequently, not only the making of the contract, but the acts done in pursuance thereof, were attributable directly to the wrong committed, and of course any damage sustained from doing those acts were recoverable. There was no question about this, but only as to how, in such a case, the damages should be estimated; and it was with reference to this state of facts, and to this precise question, that the court held that "the measure of damages was not the difference between the contract price and the reasonable market value if the property had been as represented." The reason for this is obvious. The plaintiff having, as a result of the fraud, taken the stock, and paid for it, damages occasioned by making the contract merely would not have been co-ordinate with the injury. He was entitled to "what he had lost by being deceived;" to "such damages as naturally and proximately resulted from the fraud," and were "legitimately attributable to defendant's fraudulent conduct." Now, when it is remembered that in the case before this court the vendees' acceptance of the ore is not attributable to their acting on the representation, but to other causes, the essential character of the difference which distinguishes it from Smith v. Bolles cannot fail to be comprehended; and we may add that attentive reading of the whole opinion in that case has satisfied us that the principle upon which it rests was clearly perceived by the court below, and was properly adapted to the especial facts of the case on trial.

The judgment is affirmed.