HAINES v. FRANKLIN et al.

(Circuit Court, E. D. Pennsylvania.   May 11, 1898.)

1. FALSE REPRESENTATION OF CORPORATION—STATEMENT OF CAPITAL PAID IN —CAUSE OF ACTION.

The cause of action of one who suffers loss in consequence of the false representation, in the sworn statement of the incorporators of a Pennsylvania corporation, in their application for letters patent, that 10 per centum of the capital stock is paid in, arises out of the fraud, and an action ex contractu for such loss will not lie.

2. SAME — ASSIGNEE OF JUDGMENT — INDUCEMENT TO PURCHASE — RIGHTS ACQUIRED.

The assignee of a judgment against a Pennsylvania corporation does not acquire the judgment creditors' right of action against the incorporators for false representations in the sworn application for letters patent; and he has no such cause of action unless his acquisition of the judgment was induced by his belief, and in reliance on such representations.

Henry Budd, for plaintiff.
H. M. North, Brown & Hensie, and B. C. Kready, for defendants.

DALLAS, Circuit Judge.   In Patterson v. Franklin, 35 Atl. 205, the opinion of the supreme court of Pennsylvania begins with this statement:

"The defendants were the incorporators and holders of the stock of the Keystone Standard Watch Company.   In their application for letters patent, they set forth, among other things, that the capital stock of the corporation was five hundred thousand dollars, divided into five thousand shares of the par value of one hundred dollars each; and 'that fifty thousand dollars, being ten per cent. of the capital stock, has been paid in cash to the treasurer of said corporation, whose name and residence are' William Z. Sener, Lancaster, Pa.'   The statement is the method prescribed by law for assuring the executive department of the state government that the requirements of the law have been complied with by the corporators, and that they are entitled to be made a corporation.   After letters patent have been issued, the statement, with all its indorsements, must be recorded in the proper county, for the information of the public, in order that the fact of incorporation may be known, and the credit to which the corporation is entitled may be intelligently judged of by all persons who may have occasion to do business with it.   This statement, made and sworn to in the usual manner, is now alleged to have been false in so far as it asserted the payment of fifty thousand dollars to the treasurer of the corporation, and it is asserted that not

one dollar in cash was so paid. It is certain that, after a short business career, the corporation, being unable to pay its debts, made an assignment for the benefit of creditors. The plaintiff in this action is the assignee. The defendants are the corporators by whom the alleged false certificate was signed. The right to recover is rested on the alleged fraud committed by means of the false representation contained in the certificate."

In that case it was held that "the corporation had no right of action against the defendants growing out of the false statement in the certificate, and the plaintiff, its assignee, has none." The decision has this extent, no more; but it having been suggested that, if the assignee could not recover in the right of his assignor, he might do so in the right of creditors, the court further said:

"But the creditors have no joint action against the defendants. If a right of action exists, it is several to those injured, and extends no further than the individual loss of the creditor who sues. The question of the defendants' liability to those who were led to trust the corporation because of the false certificate is not before us. What we say is that, if they had a right of action, it is not an asset, the proceeds of which are for general distribution. The action is misconceived, and there can be no recovery in this case, though the fraud was admitted on the record in the terms in which it is charged. The right to complain is in the individuals who suffer, and the right of action extends only to the individual loss of the particular person injured, if the right of action exists."

The present action is a several one. It is founded upon the same certificate, and is brought for recovery of the alleged individual loss of the plaintiff, who claims as a particular creditor of the corporation. Can it be maintained? As we have seen, Patterson v. Franklin did not decide that it could be, and the court carefully abstained from intimating any opinion upon the subject. The question is therefore an open one.

The statement of claim to which the defendants have demurred is framed ex contractu. It alleges that the representation made by the defendants, that 10 per centum of the capital stock had been paid in in cash, was "altogether false and untrue, and was a fraud upon the commonwealth of Pennsylvania, and upon all persons who might thereafter deal with the said Keystone Watch Company upon the faith of the charter or letters patent granted by the commonwealth, and further constituted a joint and several covenant with such persons that said money had been paid, or would be, into the treasury of said company, to answer the claims of the said persons who might so deal with the said corporation." Now, if the contractual liability thus averred exists, it must arise out of the Pennsylvania statute under which the certificate was filed. No independent and direct contract between the plaintiff and the defendants is asserted. Ordinarily, all contracts, whether express or implied, rest upon intent; and therefore, to establish a contract of the latter class, it is necessary that facts should be alleged and proved from which an intention to contract may be implied. No such facts are present in this case. A contract, or quasi contract, may, it is true, be founded upon statutory provisions, as where, by statute, the stockholders of a company are made individually liable to its creditors to an amount equal to the amount of stock held by them respectively. Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263. The liability thus created is directly to the several creditors, and is held to be contractual because the stockholders, by their acceptance

of the stock taken by them respectively, are assumed to have intended to enter into the obligation which the statute attached to such acceptance. But a right of private action under a statutory provision must always be dependent upon the scope and language of the particular enactment, and the statute here in question creates no contractual liability whatever. I do not mean to say that one who has suffered legal injury in consequence of the false representation alleged to be contained in this certificate may not sue for redress of that injury. On the contrary, I think the right to do so results from a correct perception of the purpose of the Pennsylvania legislature in providing for its recording; that purpose, as was said by the supreme court of that state, in Patterson v. Franklin, supra, being, to supply means "for the information of the public, in order that   *   *   *   the credit to which the corporation is entitled may be intelligently judged of by all persons who may have occasion to do business with it." The right thus resulting, however, is one which, under the old system of pleading, could have been enforced only through the appropriate action of tort, and the innovations which have been made upon that system have not gone to the extent of obliterating the broad distinction between actions *ex delicto* and actions *ex contractu*. In Patterson v. Franklin it was said, "The right to recover is rested on the alleged fraud;" and some of the language which follows this statement quite plainly indicates that the court had in mind a wrong committed, and not a contract broken, as the ground upon which an individual creditor might possibly recover. It referred to those "injured" by the "false certificate" as being the persons entitled to sue, and to "the fraud" as being the basis of their complaint, "if the right of action exists."

It is contended, however, that a plaintiff may waive a fraud and sue in contract; and this, of course, may be done in some cases. Where, from the same facts, the violation both of a duty and of a contract appears, the party aggrieved may elect upon which ground he will proceed; but I do not understand that a fraud, pure and simple, can, at the choice of either party, be converted into a contract, or that it is possible for a plaintiff, by any device of form, to charge a defendant with breaking a promise which neither in fact nor by implication of law he had ever made. The true inquiry is not as to the remedy, but as to the nature of the right. Here, the defendants did not say, "We warrant," which would be a contract, but they said, "The fact is;" and this, if untrue, was a false representation, and therefore the case, aside from any question of pleading, is essentially one of deceit. Mahurin v. Harding, 28 N. H. 128; Derry v. Peck (1889) 14 App. Cas. 337; Bragdon v. Perkins-Campbell Co., 87 Fed. 109. "Deceit consists in leading a man into damage by willfully or recklessly causing him to believe and act on a falsehood." When you have alleged that the statement was false, you must further allege that the plaintiff believed and acted upon it, and has sustained damage by so doing. McHose v. Earnshaw, 3 U. S. App. 545, 5 C. C. A. 210, and 55 Fed. 584. And the existence of these essential facts may not be left to inference or conjecture from vague and indefinite language, but must be alleged with convenient certainty; that is to say, so dis-

tinctly and explicitly as to preclude any reasonably possible misunderstanding of what is meant.

With these principles in mind, I turn to the statement of claim, and find that it nowhere alleges that the plaintiff believed and acted upon the representation in question, unless such an allegation may be supposed to be deducible from the statement that the plaintiff, in the year 1891 (more than four years after the representation was made), purchased a judgment against the Keystone Standard Watch Company, "in the full belief that everything necessary for the proper organization of the company had been complied with, and on the bona fides of all actions of the persons concerned in the organization of the same." It is impossible to regard this as amounting to a distinct and explicit allegation that the plaintiff believed and acted upon the particular statement that 10 per centum of the company's capital had been paid in, in cash, and that he sustained damage in consequence. Nothing could have been more easy than to say this plainly; and it is not unfair to presume that it was not said simply because it was known that it could not be proved.

In the plaintiff's brief it is said that he stands in the shoes of the original judgment creditor. As respects the defendant in the judgment, the corporation itself, this may be conceded; but I cannot agree that the plaintiff, as assignee of the judgment, became clothed with any rights which his assignor may have had against these defendants. Their obligation, if any, was, though collateral, an independent one. The plaintiff's alteration of his condition consisted solely in his acquisition of the judgment, and, if this was not induced by his belief in and reliance on the defendants' representation, his supposed cause of action against them is palpably defective and incomplete. This was exemplified by Lord Cairns, in Peek v. Gurney (1873) L. R. 6 H. L. 377. He put the case of a person having built a house, and desiring to sell it, and said:

"He comes to me, and wishes me to purchase it. He describes it as a highly advantageous purchase, and makes statements of fact to me with regard to the house which are untrue and are misrepresentations; but I decline to purchase, and our overtures come to an end. He subsequently sells it to some other person, upon what terms I know not. That other person completes the purchase, and that other person, desiring to raise money on mortgage, applies to me to lend him money. I lend him money upon a mortgage of the house. The facts stated to me originally turn out to be untrue, and are so material as that the house, not being as represented, becomes comparatively worthless. I then apply to the original vendor, remind him of what he told me, and complain to him that my money lent upon mortgage had been lost; and I commence an action against him for damages to recover my loss. I ask, could such an action be maintained? I know of no authority for it, and I am of opinion that an action of that kind would not lie."

In the instance thus suggested, the transaction of mortgage was much more nearly connected with the false representations than is the purchase of the judgment with the alleged false certificate in this case. In Peek v. Gurney the bill alleged misrepresentations of facts and concealment of facts on the part of the directors, in a prospectus they had issued, by which the complainant had been induced to purchase shares; and it was held, the case being treated as one of deceit, that, assuming the falsity of the representations, there was no liability to

one who had purchased shares of the corporation in the market, notwithstanding that the purchase had been induced by the representations complained of. That case seems to me to closely resemble the present one. It was fully considered by very able judges, both in the first instance and on appeal; and the reasoning upon which the complainant there was denied recovery is, I think, conclusive against the plaintiff here. Furthermore, there was in that case no denial that the plaintiff had bought in reliance on the prospectus, whereas in this one there is no sufficient allegation that the plaintiff either believed or relied upon the certificate which he says was false. Upon the whole case, I am persuaded that the averment of the demurrants that the plaintiff has not, by his said declaration, alleged a state of facts entitling him to recover from them, is well founded in law; and therefore judgment for the defendants will be entered.