## EGBERT v. SUN CO.

(Circuit Court, E. D. Pennsylvania. December 21, 1903.)

### No. 38.

1. CORPORATIONS—REPRESENTATION BY OFFICERS—CONTRACTS WITHIN APPARENT AUTHORITY

A corporation is bound by a contract of employment made in its name and behalf by its president, who largely controlled the management of its business, and was apparently acting within his authority, and where

---

¶ 1. See Corporations, vol. 12, Cent. Dig. § 1616.

the employé left his former position and entered into such contract at his solicitation, and relying in good faith on his supposed authority to act for the corporation.

**2. SAME—RATIFICATION—ACCEPTING SERVICES OF EMPLOYÉ.**

The president of defendant corporation contracted in writing in its behalf for the employment of plaintiff at a stated salary, the contract reserving the right to terminate the employment by paying him a sum equal to a year's salary. Plaintiff entered upon the employment, and his services were accepted and paid for at the stipulated salary until defendant exercised the right given by the contract to discharge him. *Held*, that by so accepting and paying for his services and exercising the privilege given by the contract either with knowledge of its terms or without inquiring in regard thereto, the board of directors must be deemed to have ratified the same in its entirety, and that defendant was liable thereon for the stipulated consideration for the exercise of the power to discharge.

**8. CONTRACT OF EMPLOYMENT—CONSTRUCTION.**

By a written contract embodied in a letter of defendant, plaintiff was employed by defendant "at a salary of $5,000 per year," and the contract contained this further provision: "If for any reason it is impractical and not convenient for the Sun Company to retain you, the said company will pay you $5,000 or one year's salary at the termination of this arrangement, provided, of course, that such termination is at the request of the Sun Company." *Held*, that such provision had reference to a termination before the end of a year, and that on the discharge of plaintiff before the end of the year his salary ceased from the time of discharge, and his right of recovery was limited to the stipulated payment for loss of employment.

At Law. On motion of defendant for judgment non obstante veredicto.

L. L. Smith, for plaintiff.
W. R. Bliss and W. B. Broomall, for defendant.

DALLAS, Circuit Judge. "Undoubtedly the board of directors is generally the governing and controlling body of a corporation," and therefore, except with its assent, express or implied, a corporation cannot incur a contractual obligation. Salem Iron Co. v. Lake Superior Consol. Iron Mines, 112 Fed. 241, 50 C. C. A. 213. But it is equally well settled that "corporations are liable for the acts of their servants while engaged in the business of their employment, in the same manner and to the same extent that individuals are liable under like circumstances." And, indeed, it has been perceived that, for the enforcement of fair dealing by corporations, they should be held to this liability with especial stringency, inasmuch as, by reason of their intangible nature, they are incapable of acting otherwise than through the agency of natural persons, and those who deal with them in good faith, without having any reason to suspect any defect of authority on the part of those acting for them, ought not, after involving themselves in onerous engagements, to be told that the apparent and asserted authority upon which they had relied as being adequate to bind the corporation, was defective or irregular. Merchants' Bank v. State Bank, 10 Wall. 644, 645, 19 L. Ed. 1008. Upon this ground alone, regardless of the question of ratification presently to be referred to, I am of opinion that the defendant's point to the effect that there was no evidence that it either made or ratified the contract

upon which this suit was founded was not well taken; and that, therefore, its motion for judgment non obstante veredicto must be denied, and the first reason assigned in support of its motion for a new trial be overruled. The contract in question, as appears from the copy thereof hereafter contained in this opinion, was in the form of a letter by the president of the defendant company. It was signed by him as its president, and was written upon paper bearing the letter heading of the company. The writer had been permitted to and did exercise very general authority in the conduct of the corporation's affairs. Upon being asked, as a witness, whether it was not true that almost the entire executive management of its business was in his hands, he answered, "I think I was very largely in control of it," and from the testimony as a whole it plainly appears that he was. In Merchants' Bank v. State Bank, supra, the Supreme Court held that the cashier of a bank, who, with its knowledge, had dealt with the public in buying and selling exchange for its account, might be inferred to have authority to buy and sell coin on its behalf, and also that the authority of such cashier to pledge the bank's credit by certifying a check to be good was inferable from the fact of his having frequently pledged its credit for large amounts in the usual course of business. In the opinion of the court in that case several observations were made, which, in addition to those already referred to, are peculiarly applicable to the present one. It was said:

"Smith was the cashier of the State Bank. As such he approached the Merchants' Bank. The bank did not approach him. Upon the faith of his acts and declarations, it parted with its property. The misfortune occurred through him, and, as the case appears on the record, upon the plainest principles of justice, the loss should fall upon the defendant. The ethics and the law of the case alike require this result."

In the case in hand Pew was the president of the Sun Company. As such he approached Egbert. Egbert did not approach him. Upon the faith of his letter, Egbert gave up the position in which he was then employed, and with nothing but that letter to justify it in doing so, the corporation itself terminated its arrangement with him, and threw him entirely out of employment. The consequent loss to Egbert resulted through the action of Pew, and upon the plainest principles of justice, the corporation for which he acted should compensate that loss by payment of the sum agreed upon. The court in the same case further said (quoting from a New York decision):

"The bank selects its teller, and places him in a position of great responsibility. Persons having no voice in his selection are obliged to deal with the bank through him. If, therefore, while acting on business of the bank, and within the scope of his employment, *so far as is known or can be seen by the party dealing with him*, he is guilty of misrepresentation, ought not the bank to be responsible?"

The portion of this extract which is here italicized appears in italics in the opinion of the Supreme Court of the United States as reported, and it is followed by this statement: "Smith, by his conduct, if not by his declarations, avowed his authority to buy the certificates and gold from the Merchants' Bank, and the bank, under the circumstances, had a right to believe him;" and a little further on the princi-

ple which the court was enunciating, and which I think is quite as applicable to the present case, is tersely stated thus: "Those dealing with a bank in good faith have a right to presume integrity on the part of its officers when acting within the apparent sphere of their duties, and the bank is bound accordingly." Upon the point now under consideration, I regard this authoritative pronouncement as decisive, and therefore the other cases in the courts of the United States, which are in conformity with it, and those in the state courts, which, for the most part, are in accord with it, need not be referred to.

In the brief for the defendant it is conceded that the fact that the plaintiff's services were accepted and paid for at the rate of $5,000 a year was a ratification of his employment at that salary, but it is ingeniously argued that the particular feature of the contract to pay $5,000 upon the Sun Company's termination of the employment, was not included in the ratification. Waiving the question whether a contract may, in any case, be ratified in part, and yet, upon suit brought, be in part repudiated, it is difficult to understand how, under this particular contract, the peculiar right of discharge which it especially conferred could be exercised without assumption of the correlative obligation to pay the stipulated consideration for the concession of that right. The corporation had no justification for its termination of the employment of Egbert when and as it terminated it other than that which it derived from the letter of its president, and it cannot be permitted to take a benefit under that letter, and at the same time disown the obligation it imposed. McHose v. Earnshaw, 55 Fed. 587, 5 C. C. A. 210. Moreover, I think that the knowledge which the corporation admittedly had of the fact of the plaintiff's employment, even if, as contended, it was uninformed as to the details of the agreement upon which he was employed, is sufficient to establish what is equivalent to a ratification of the contract as an entirety. It was, of course, known that the president, under the general authority which he exercised, had made whatever agreement was made, and therefore the omission of the board to make any inquiry respecting it must be taken to have amounted to a confirmation of his power to settle and prescribe its terms. Rolling Mill v. Railroad, 120 U. S. 256, 7 Sup. Ct. 542, 30 L. Ed. 639; Railway Cos. v. Keokuk Co., 131 U. S. 371, 9 Sup. Ct. 770, 33 L. Ed. 157. I do not recall that it was suggested, at any stage of the trial, that there was any evidence which called for a submission to the jury of the question whether the defendant had either made or ratified the contract sued upon. The defendant, in the first point which it submitted, presented that question as one of law arising upon undisputed facts. It did not ask for a submission of evidence, but, on the contrary, claimed that there was none to submit; and, accordingly, in disaffirming it, I stated, as the result of such disaffirmance, that for the purposes of the trial it was to be assumed that the contract in question was the contract of the corporation defendant. To this statement no exception was then taken, nor has its correctness been challenged by any of the reasons assigned for a new trial. Under these circumstances, the argument which the defendant has now presented upon the subject, even if convincing,

ought not, in my opinion, to induce the nullification of a verdict with which the court is entirely satisfied. But I have not been convinced that there was any evidence, which, if submitted, would have warranted a finding that the contract in question was not binding upon the defendant corporation. Such a finding could not, I think, have been reasonably based upon the testimony; and therefore the instruction which was given was not erroneous, and might properly have been adhered to, even if it had been objected to in due season. Merchants' Bank v. State Bank, 10 Wall. 665, 19 L. Ed. 1008.

The contractual letter heretofore referred to is as follows:

"Sun Company, Tradesmens Building, Pittsburg.

"March 25, 1902.

"Bertrice Egbert, Esq., Pittsburg, Pa.—Dear Sir: In compliance with the verbal conversation had with you a few days ago, the Sun Company agrees to engage you at a salary of five thousand dollars per year to superintend the refineries at Marcus Hook, Pa., and Toledo, Ohio, you to reside at a point in the vicinity of Marcus Hook.

"If, for any reason, it is impractical and not convenient for the Sun Company to retain you, the said company will pay you five thousand dollars ($5000.) or one year's salary, at the termination of this arrangement, provided of course that such termination is at the request of the Sun Company.

"Yours truly, J. N. Pew, President."

I think that the construction I put upon this letter at the trial was not accordant with the intent of the parties as disclosed by the writing, or with the plaintiff's own understanding of its meaning as shown by his subsequent conduct. I have no doubt that its first paragraph, standing alone, would import a hiring for a year; but I have reached the conclusion that, by the second paragraph, the Sun Company reserved the right to terminate the arrangement upon the payment of $5,000 at any time during the continuance of the employment, and not only upon a year's expiration. The "termination of this arrangement" which was contemplated was not a termination by lapse of time, but "at the request of the Sun Company." No request by it would have been requisite to terminate it at the end of a year, but that it might terminate it at any time, if for any reason it found it impractical or inconvenient to continue it, this provision was necessary. It cannot rationally be supposed to have been meant that, if it should terminate it at the beginning of any year, the plaintiff was to be paid, not only one year's salary, but also the additional sum of $5,000. The natural and reasonable view of the matter, as it seems to me, is that whenever the arrangement should be terminated, the employment, and consequently the right to salary, would cease to exist; and that thereupon the sum of $5,000 would be paid to Egbert to indemnify him against his consequent loss of occupation, the probable duration of which the parties arbitrarily estimated to be the period of one year thereafter. This construction of the letter was adopted by the plaintiff. He acquiesced in his discharge during the running of the first year, and a payment of $1,000, which was made to him on account of the $5,000 here in question, was accepted by him on the basis of that discharge. He was not entitled both to salary and to compensation for his deprivation of it; and yet it is admitted, in the plaintiff's brief, that in the jury's assessment of damages there was included as for salary the

sum of $1,180.32. To that extent, therefore, the verdict was excessive, and accordingly it is now ordered that, if the plaintiff shall, on or before January 4, 1904, file a remittitur relinquishing $1,180.32 of the amount of the verdict, the defendant's rule for a new trial will be discharged, but otherwise will be made absolute.

The defendant's motion for judgment non obstante veredicto is denied.