## QUEEN v. COMMONWEALTH TRUST CO. et al.
### No. 4277.

Circuit Court of Appeals, Third Circuit.
April 15, 1931.

John Duggan, of Uniontown, Pa., and J. Thos. Hoffman, Cornelius D. Scully, and Guy B. Hoge, all of Pittsburgh, Pa., for appellant.

John M. Freeman, H. F. Stambaugh, and Watson & Freeman, all of Pittsburgh, Pa., for appellee.

Before DAVIS, Circuit Judge, and JOHNSON, District Judge.

JOHNSON, District Judge.

This is an action of assumpsit to recover from the Commonwealth Trust Company and the Commonwealth Real Estate Company commissions with interest on a contract for the sale of property of the Western Allegheny Railroad Company, and for the sale of certain mineral and mining property of the North Penn Coal Company. The case came on for trial before the court and a jury, and by direction of the court a verdict was rendered for the defendants. A motion for a new trial was refused and judgment entered for the defendants, and from this order an appeal has been taken to this court, and by agreement of the parties two judges alone sat at the argument in this court.

The evidence offered and received and the evidence offered but rejected by the court tended to show that the Commonwealth Trust Company owned a large block of the stock of the North Penn Coal Company, and the North Penn Coal Company owned the entire stock of the Western Allegheny Railroad Company, and the Commonwealth Trust Company owned all of the stock of the Commonwealth Real Estate Company, a subsidiary company, and the two companies had their offices together.

A. J. Kelly was president and general manager of the Commonwealth Real Estate Company and for years its managing head in the purchase, sale, and management of the property of the company whose directors held no regular or formal meetings and kept no minutes. This company, through Kelly, sold real estate for the Commonwealth Trust Company, and Kelly on previous occasions sold real estate for the Commonwealth Real Estate Company through other parties and split the commission. Kelly was not only president of the Commonwealth Real Estate Company but at the same time a director of the Commonwealth Trust Company.

John S. Herron, president of the Commonwealth Trust Company, informed Emmet Queen, the plaintiff, a real estate agent, who sought to sell the properties in question, that A. J. Kelly had full authority to give prices, terms, and commissions for the sale of the properties in question, and Herron introduced Queen to Kelly, who agreed with Queen that if Queen should sell the properties for $3,000,000, or such sum as the two companies would accept, they would pay him the sum of $250,000 commission, or if he would sell either of the properties they would pay him commission on the property sold of $125,000.

Queen entered into negotiations for the sale of the property which resulted in the sale of the same to the Pennsylvania Railroad Company and the Commonwealth Trust Company received the proceeds of the sale, either in its own right or as trustee.

We are of opinion that all of the evidence which tended to show relationship between the Commonwealth Trust Company and the Commonwealth Real Estate Company and their course of dealings with each other and through Kelly, president and general manager of the Real Estate Company, should have been received and it was error to reject

such evidence and give binding instructions for the defendant.

In Egbert v. Sun Co. (C. C.) 126 F. 568, the court held: "A corporation is bound by a contract of employment made in its name and behalf by its president, who largely controlled the management of its business, and was apparently acting within his authority." What Dallas, Circuit Judge, delivering the opinion of the court, said in that case is applicable here: "'Undoubtedly the board of directors is generally the governing and controlling body of a corporation; and therefore, except with its assent, express or implied, a corporation cannot incur a contractual obligation. Salem Iron Co. v. Lake Superior Consol. Iron Mines, 112 F. 241, 50 C. C. A. 213. But it is equally well settled that 'corporations are liable for the acts of their servants while engaged in the business of their employment, in the same manner and to the same extent that individuals are liable under like circumstances.' And, indeed, it has been perceived that, for the enforcement of fair dealing by corporations, they should be held to this liability with especial stringency, inasmuch as, by reason of their intangible nature, they are incapable of acting otherwise than through the agency of natural persons, and those who deal with them in good faith, without having any reason to suspect any defect of authority on the part of those acting for them, ought not, after involving themselves in onerous engagements, to be told that the apparent and asserted authority upon which they had relied as being adequate to bind the corporation, was defective or irregular. Merchants' Bank v. State Bank, 10 Wall. 644, 645, 19 L. Ed. 1008."

It is obvious that Kelly, who was a director of the Commonwealth Trust Company and the president and general manager of the Commonwealth Real Estate Company and a director in the North Penn Coal Company, had apparent authority to bind the defendant if the evidence offered was to be believed. He was intrusted with large operations of the Commonwealth Real Estate Company, which consisted of buying and selling real estate, and the making of contracts with the plaintiff which appear to have been within the scope of his authority.

We are not deciding the merits of this case, but we do hold that the trial court should have received the evidence offered to show the relationship of the two defendants and their course of dealing with each other and with Kelly and should have received the testimony as to the contract between Kelly and Queen for the selling of the property in question and should not have given binding instructions for the defendant but should have heard all of the plaintiff's case and for failing to do so the judgment of the court below should be reversed.

And now, March 30, 1931, the judgment of the District Court is reversed, and a new trial is ordered.