## Orth & Bro. *v.* Board of Education, Appellant.

*Contract—Construction—Architect—Commissions — Gross percentage—Cancellation of contract.*

1. It is an unbending rule that all the words of a contract are to be given an appropriate meaning whenever it is reasonably possible so to do.

2. Where an architect's contract provides that he shall be paid for his services a gross percentage upon the entire cost of a building to be erected, such payments to be made in certain percentages as the work progresses, and that the contract may be cancelled, in which event he is to receive, as full compensation, the percentages then due, he will be entitled to recover only the percentages which were payable at the time the cancellation was in fact made.

3. Where an architect's contract provides that he shall receive a gross percentage upon the completion and acceptance of a building, and only a part is completed and accepted, he will be entitled to the full percentage on that part, since there was a completion and acceptance so far as it is concerned.

4. Where an architect's contract provides that a given percentage is to be paid upon the cost of the work and the building is not erected, so that there is no actual cost, the basis upon which the percentage is to be calculated must be determined according to equitable principles, as of the date when the architect's work was actually performed.

5. Where a party has a right to cancel a contract his reasons for so doing are wholly immaterial.

6. Harlow v. Beaver Falls Borough, 188 Pa. 263, and Sauer v. McKees Rocks School District, 243 Pa. 294, cited and explained.

Argued October 21, 1921.   Appeal, No. 207, Oct. T., 1920, by defendant, from judgment of C. P. Allegheny Co., April T., 1920, No. 826, on verdict for plaintiffs, in case of Geo. S. Orth et al. v. Board of Public Education of the School District of Pittsburgh.   Before MOSCH-ZISKER, C. J., WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Reversed.

Assumpsit for architect's services.   Before REID, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs for $45,000.   Defendant appealed.

*Errors assigned* were various rulings and instructions sufficiently appearing by the opinion of the Supreme Court, quoting record.

*J. Rodgers McCreery,* for appellant.—The jury was instructed to award the compensation which plaintiff would have earned if he had lived and the building had been completed, less what it would have cost him to complete the contract.   In so doing, the court ignored the rule applicable where an entire contract, depending upon personal qualities or ability, terminates by death or disability of the employee.   In such case recovery is limited to what has then been earned by the employee. The value of the bargain is not an element.

*Ernest C. Irwin,* with him *W. K. Johnson, C. Elmer Brown* and *Watson & Freeman,* for appellees.—Under the law and the facts, plaintiff was entitled to recover his full six per cent less the cost of completing his contract: Harlow v. Beaver Falls, 188 Pa. 263; Sauer v. McKees Rocks School Dist., 243 Pa. 294.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1922:

Defendant appeals from a judgment in favor of plaintiffs, a firm of architects, who recovered upon a contract

for preparing plans and specifications and superintending the construction of a high-school building in the City of Pittsburgh; the paragraph relied on being as follows:

"7. The Board shall pay the architect as and in full compensation for his services hereunder, six per cent upon the entire cost of the building; payments to be made as follows:

"1 per centum when the final preliminary study is adopted.

"2 per centum when the working drawings and specifications are completed and adopted.

"1 per centum when the contract is awarded.

"1 per centum in monthly installments, prorated in accordance with the monthly certificate for payment to the contractor or contractors.

"1 per centum upon the completion and acceptance of the building."

If this paragraph was the only one to be considered, it would perhaps be difficult, unless we overruled Harlow v. Beaver Falls Borough, 188 Pa. 263, and Sauer v. McKees Rocks School District, 243 Pa. 294, to do other than affirm the judgment; since here, as in those cases, the compensation is specified to be a certain percentage "upon the entire cost of the building," the later provisions, relating to the installments, apparently fixing only the times for payment, and not altering the duty to ultimately allow the entire "six per cent." Other paragraphs in the present contract, however, compel a different conclusion from the one reached in those cases.

It further provides that plaintiffs shall prepare "preliminary plans, revisions and changes therein, with such estimates of cost of construction as may be required," shall thereafter "promptly prepare full specifications and such further plans" as may be needed; "shall have supervision of the construction of the building"; that the board reserves the right to terminate the contract if the architect dies, or upon "fifteen days' written notice,"

without the happening of this contingency, in either of which latter events plaintiffs "shall be entitled as full compensation to the percentages then due."

Evidently knowing of the limitations placed by law upon the expenditure of public funds, and that the members of the board would be guilty of a breach of duty if they erected the building at a cost largely in excess of its actual value to the district, plaintiffs inserted in the specifications, which they prepared, the usual provision that the board reserved the right to reject any and all bids. They also, in accordance with the contract, advised the board that the cost of completing the building would be $643,025, and this, with certain additions afterwards made by consent of the board, indicated a total cost of $833,530.96.

When the bids were received and opened, it was discovered that,—owing to the greatly increased cost of labor and materials, due to the World War,—the lowest amount for which any one would do the work and the additions above referred to, was the sum of $1,234,-499.89. This was not only greatly in excess of the estimates made by plaintiffs, but, as the court below says, was "far beyond the funds available, or, in any event, a sum which the board did not deem it prudent to expend," and hence, acting in good faith and in accordance with its duty, it rejected all the bids. So far as appears, plaintiffs made no objection to this. The cost of labor and materials having continued to advance, it was decided to abandon the project until matters in the building trades became more nearly normal; and this had not occurred when one of the architects died, and the contract with the firm was rescinded, in accordance with the foregoing provisions of the contract.

The court below held that plaintiffs were entitled to recover six per cent of whatever sum the jury found would have been the cost of the building if it had been constructed at the time the bids were received and rejected, less the sum of $23,677.94, which had been paid

on account, and also whatever plaintiffs would have had to expend in superintending the work, (which was estimated to be $7,000), and that the jury might find the cost of the building would have been the lowest bid above set forth; on this basis the verdict was rendered.

Three questions are raised on the appeal: (1st) Were plaintiffs entitled to six per cent upon the full cost of the building, though it had not been erected?     (2d) Was this percentage to be reckoned upon what the cost would have been, had the work been done at the time the bids were received and rejected?     (3d) Was it competent to prove that the contract with plaintiffs was cancelled because of their threat to bring suit, if they were not paid?     Each of these questions must be determined in favor of appellant.

It is certain plaintiffs must have anticipated the possibility the school would not be erected.     This necessarily follows from the provision above referred to, and by the insertion into the specifications of the clause authorizing the board to reject any and all bids.     It is certain also that the words, they "shall be entitled as full compensation, to the *percentages then due,*" in the clause relating to cancellation of the contract, can mean only the particular percentages, applicable to the situation existing at the time of cancellation.     If it was meant, as appellees contend, that the percentages referred to was the single percentage of six per cent, which was provided for superintendence as well as for drawing the plans and specifications, not only was the plural form improper, but the words "percentage then due" were unnecessary and meaningless, for precisely the same result would be reached if they had been omitted.     It is an unbending rule, however, that all the words of a contract are to be given an appropriate meaning, whenever it is reasonably possible so to do, as in the present case it is (Wager v. Wager, 1 S. & R. 374; Knickerbocker Trust Co. v. Ryan, 227 Pa. 245; Vulcanite Paving Co. v. Phila., 239 Pa. 524) ; and hence the

words "percentages then due" must be given here their usual meaning, and this compels the conclusion that, if the building was not erected, only three per cent was to be paid for the preliminary study and the preparation of working drawings and specifications. There was, however, some work actually done, and for this plaintiffs are entitled to six per cent of its actual cost; we say six per cent, instead of five, because there was a "completion and acceptance of the building," so far as concerns this particular work.

It was also erroneous to estimate the three per cent on the excessive cost, arising out of the unusual conditions prevailing when the bids were received. As already pointed out, one per cent was due when "the final preliminary study is adopted," and an additional two per cent when "the working drawings and specifications are completed and adopted." There was then no other "cost of the building" except the "estimates of cost of construction," calculated by plaintiffs themselves, and hence the three per cent, if then paid, as the contract provided it should be, necessarily would have had to be computed thereon. Appellee's contention that these "estimates of cost, presented to board, were but rough estimates largely based upon data received from defendants' superintendent of buildings," is of no moment. They were none the less plaintiff's estimates, prepared for the purpose of enabling the board to determine whether or not it would ask for bids, and must be held binding, therefore, in case of a decision, in good faith, not to proceed. The same conclusion, however, is reached from another standpoint.

The contract calls for the six per cent to be estimated on the "entire cost of the building," of which, strictly speaking, there was none, since the building was not constructed. Hence it is necessary to determine, according to equitable principles, what the parties contemplated should be paid in the event of this contingency. Appellee contends that the words "percentages

then due" necessarily refer to the time of cancellation, and this is, of course, true; but they do not refer to the "cost" on which those percentages are to be calculated. Clearly they were to be compensation for the work actually done, not for that which might be done, and equally clearly they were to be measured by the value of the work at the time it was done, not at some later time, when the basis might be either more or less, and certainly not when an unexpected contingency greatly changed the status. In the present instance, this period of time was before the great increase in the cost of labor and materials, and not afterwards. This conclusion does not militate against the fact that, if the work had been done, the actual cost would have been the basis; for then there would have been an "entire cost of the building," and the different parts of the contract, "preliminary study," the preparation of "the working drawings and specifications," the additional drawings which, appellee testified, always have to be made during the progress of the work, and the supervision of the work itself, would have furnished, together and not separately, the six per cent payable on that "entire cost."

Perhaps every one would admit, that if, by reason of the draft, it had been almost impossible to obtain labor and materials for building purposes, so that the lowest bid had been $10,000,000 or $20,000,000 instead of $1,234,499.89, these percentages could not have been charged on the larger figure; yet the difference is one of degree only and not in kind, and, under the ruling of the court below, the cost, determined even by such an excessive bid, if fairly made, might have furnished the proper basis.

It follows that, so far as the present record discloses, the jury should have been told that the three per cent was to be calculated on the $643,025 "estimate of cost of construction" prepared by plaintiffs and accepted by defendant, plus the additions of $190,515.96 made by consent of the board.

The error, which underlies the court's conclusion on this point, consists in supposing that the method, which is usually adopted in applying the appropriate legal rule to the facts of a particular case, is the rule itself. This mistake is not an uncommon one, for a statement of the means nearly always adopted to reach a particular end, if repeated often enough, will cause many to unthinkingly conclude it is the only method to attain the end, and hence is, in effect, the end itself. A striking instance of this is found in the cognate case of Kountz v. Kirkpatrick, 72 Pa. 376, where the court below was reversed for holding that the measure of damages for the failure to deliver stock, was the difference between the market price and the contract price, at the time and place of delivery; whereas the true measure is the difference between the value of the article and the contract price, at that time and place; the "value" being nearly always determined by the "market price," but not permissible there because of the unusual circumstances appearing in the evidence.

We are also of opinion that evidence of the alleged threat made by plaintiff's counsel to defendant's, when they were negotiating for a settlement of the controversy, should not have been admitted; it could not aid the jury in determining any of the questions to be decided by them. If for no other reason, it was inadmissible because defendant had the right to cancel the contract, and hence its reasons for so doing were wholly immaterial: Scott v. Pittsburgh, 266 Pa. 52; Roush v. Herbick, 269 Pa. 145.

The judgment of the court below is reversed and a venire facias de novo is awarded.