## Dittoe, et al. v. Morgan.

(Decided February 10, 1925.)

### Appeal from Perry Circuit Court.

1. Contracts—Architects' Contract as Related to Compensation Construed.—Under architects' contract, providing that they should receive 3 per cent. of proposed cost of construction on completion of working drawings and specifications, and on receipt of bids an

additional 1½ per cent., and a remaining 2½ per cent. as work progressed, where work was abandoned on receipt of bids, held, architects were entitled to receive as compensation for services to that date 4½ per cent. of proposed cost.

2.   Contracts—Lowest Bid Held Not Property Treated as Cost of Construction as Basis for Determining Architects' Compensation on Abandonment of Enterprise.—Where architects' contract provided for compensation at stipulated percentage of cost of construction, and provided that until definite estimate of cost was furnished charges should be based on proposed cost, and where work was abandoned on receipt of bids, held; lowest bid greatly in excess of proposed cost could not be treated as cost of construction for purposes of determining architects' compensation to that date.

GROVER C. WILSON, JOHN E. WILSON, T. E. MOORE, JR., and R. T. MOORE for appellants.

B. P. WOOTTON, W. W. REEVES, F. J. EVERSOLE, and FAULKNER, STANFILL & FAULKNER for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Jessie Morgan owned a valuable lot in the city of Hazard, upon which he desired to erect a business house to cost $20,000.00. The appellants are architects with offices in Cincinnati. One of the firm, Mr. Fahenestock, was in Hazard the first of February, 1919, and met Mr. Morgan. It appears that he already had information of Mr. Morgan's intentions, and after some consultation a written contract employing appellants as architects in the construction of the proposed building was executed by the parties. It contained the following stipulations:

"The said owner, for and in consideration of the said architects performing the covenants and agreements above mentioned, does hereby agree to pay to said architects a sum equal to 7% of the total cost of the construction of said building and improvements, and it is further agreed that payment shall be made in installments as the work progresses, as follows, to-wit: upon the completion of the working drawings and specifications (i. e., when bids for construction are ready to be called for) 3%; upon receipt of bids for the construction of the building improvement, an additional 1½%, the remaining 2½% as the work of construction progresses at the

rate of 2½% of the value of each certificate issued by the architects to the contractor, payable on the date borne by said certificate.

"It is also agreed that until a definite estimate is furnished the architects' charges shall be based upon the proposed cost of the work, and the payment received by the architects from the owner during such time shall be considered as instalments of the entire fee which is based upon the actual cost, which shall include the cost of any and all material, or work included in the said plans and specifications or entering into the said improvement.

"The architects agree to use their best efforts to secure the lowest possible bids consistent with the class of work intended, but shall not be held liable for the cost of said improvement.

"It is further agreed that in case the work is abandoned before completion, the architects shall be reimbursed for the amount of labor performed prior to such abandonment, in accordance with rates established by this contract."

Mr. Fahenestock returned to Cincinnati at once, and work was begun upon the plans and specifications. On the 17th of February he wrote Mr. Morgan, stating that he would be in Hazard on the evening of the 20th, with the plans and specifications, to which Morgan answered by wire that he would meet him in Lexington at the Phoenix hotel on the 21st. That meeting was held and the plans and specifications met the approval of Morgan; he was then *en route* to Louisville and took one of the drawings along with him, hoping to interest others in the project.

The architects sent copies of the plans and specifications to various contracting firms throughout the country and asked for bids to be submitted by noon of Thursday, March 6th, at Hazard, Ky. Mr. Fahenestock was present at that time; the various bids were opened, ranging from $35,000.00 to $65,000.00. Mr. Fahenestock advised the rejection of all of these and this was done. An effort was then made to have the bids scaled down, but negotiations in this respect were unavailing and the building project was abandoned, the lowest bid being $30,000.00.

On the 20th of February appellants made out the following bill:

"Cincinnati, Feb. 20, 1919.

"Jesse Morgan
to
Dittoe, Fahenstock & Ferber, Dr.

On account for architectural services rendered to date $600.00. Received payment, March 5, 1919. Job No. 194.

"Dittoe, Fahenstock & Ferber.

"Thank you.                                    Per. F. C."

There is some difference in the memory of Mr. Morgan and Mr. Fahenstock as to whether this was delivered at the Lexington meeting or mailed to Mr. Morgan at ·Hazard, but at any rate he mailed them a check for the amount.

After the abandonment of the enterprise appellants presented to Mr. Morgan a bill for services, claiming that they had furnished satisfactory plans and specifications which had been properly submitted to bidders, and therefore was entitled to recover the first two installments of the contract of 3% and 1½% respectively; that the lowest bid offered was $30,000.00; that 4½% commission on that basis amounted to $1,350.00, from which should be deducted the $600.00 paid, leaving a balance of $750.00. Morgan refused to pay it and they filed suit to recover that sum. The answer denied the performance of the contract, but did not plead affirmatively. The court permitted the defendant to testify as to his construction of the contract and its breaches and submitted the issues thus presented to the jury in its instructions.

From a verdict for defendant, plaintiff appeals.

The detailed drawings for use in the prosecution of the work were not furnished at the time, and Mr. Morgan insists that for this reason the drawings were incomplete. He further insists that the plaintiffs undertook to procure a bidder for the construction at the price of $20,000.00; that they failed in this and he was not liable for anything, though he did pay them more than they were entitled to recover, and that same was accepted by them in payment of the services performed.

It is admitted, however, that the plans and specification were satisfactory and that "bids for construction were ready to be called for" as required in the contract and were furnished to bidders for that purpose,

and bids actually received thereon, and there is no intimation that they were not sufficient in that respect. Further it is proven by the plaintiffs without contradiction that the detailed drawings form a part of supervision of construction, and are furnished from time to time as the work progresses, but are not included in the drawings, plans and specifications furnished to bidders. In the contract the architects agreed "to use their best efforts to secure the lowest possible bids consistent with the class of work intended" but nowhere agreed to procure a bid for any particular sum, and the amount of $20,-000.00 is not mentioned in that instrument. There is no allegation of fraud or mistake, nor a plea of accord and satisfaction, nor proof that plaintiffs failed in the discharge of any of their duties before the abandonment of the contract; hence a decision turns upon the construction of that instrument.

That instrument seems reasonably clear as to the steps to be taken and duties to be performed by the architects, and for the payment of their services as the work progressed; but if we should assume that it is indefinite as to the time at which the detailed drawings should be furnished, still as we have seen there is no contradiction in the evidence on this point, and as it is admitted that the plans and specifications as drawn were accepted as satisfactory, were sent out and bids submitted thereon, and no objection at any time raised thereto, it is clear that the plaintiffs had taken the first two steps in their contract and were entitled to recover 4½% commission therefor, as herein provided.

A question arises, upon what amount shall this be based? We think this also reasonably clear. The contract provides that in case the work is abandoned before completion the architects shall be reimbursed for the amount of labor performed prior to such abandonment in accordance with rates established by this contract; "that until a definite estimate is furnished, the architects' charges shall be based upon the proposed cost of the work." In this case the work was abandoned and no definite estimate was furnished. The lowest bid cannot be arbitrarily fixed as a definite estimate because it was rejected as being too high. The contract clearly contemplates that under such circumstances the charges shall be based upon the proposed cost of the work. The evidence indicates that this was $20,000.00, and such was

the amount upon which the architects based their first charge.

Accepting this as a basis, plaintiffs were entitled to recover 4½% of $20,000.00, or $900.00, subject to a credit of $600.00, and the court should have peremptorily instructed the jury to find a verdict in their favor for $300.00.

Wherefore, judgment is reversed and cause remanded for proceedings consistent with this opinion.