[Civ. No. 7904. First Appellate District, Division Two.—July 26, 1932.]

J. R. MILLER et al., Respondents, v. THE SAN FRAN-
CISCO CHURCH EXTENSION SOCIETY OF THE
METHODIST EPISCOPAL CHURCH et al., Appel-
lants.

J. E. White and Walter McGovern for Appellants.

Keyes & Erskine for Respondents.

STURTEVANT, J.—This is an appeal by the defendants from a judgment of damages arising out of a transaction in which the plaintiffs, as architects, were employed. The record is very long. The facts are few and may be briefly stated.

In the conflagration of 1906 in San Francisco many churches were burned, and among others the church buildings then occupied by the congregation of each appellant except San Francisco Church Extension Society of the Methodist Episcopal Church. The latter corporation was an auxiliary organization of the denomination but never conducted a church. The congregation of each church desired the construction of a place of worship that it might call "home". The congregations, as such, and their several members commenced to discuss ways and means. Later, on December 1, 1925, the several congregations formed a joint organization and appointed members of the Downtown Church Committee with authority to act but that it should act through the San Francisco Church Extension Society of the Methodist Episcopal Church as their trustee of the enterprise. Still later the Downtown Church Committee authorized the Society to enter into and it did enter into a contract with the plaintiffs. In so far as pertinent to this action said contract provided:

"1. This agreement, made and entered into this 1st day of December, in the year of Our Lord, one thousand nine hundred and twenty-five, by and between the San Francisco Church Extension Society of the Methodist Episcopal

Church, a corporation duly organized and existing under and by virtue of the laws of the State of California, hereinafter called the Owner, and J. R. Miller and T. L. Pflueger, doing business under the firm name of Miller and Pflueger, hereinafter called the Architects:

"2. Witnesseth: That whereas, the said Owner intends to erect and construct a church building upon that certain real property situated, lying, and being in the City and County of San Francisco, State of California, and more particularly described as follows:

"3. Commencing at a point of intersection of the Northerly line of McAllister Street with the Westerly line of Leavenworth Street; running thence Westerly along the said Northerly line of McAllister Street, one hundred thirty-seven (137) feet, six (6) inches; thence at right angles Northerly one hundred thirty-seven (137) feet six (6) inches; thence at right angles one hundred thirty-seven (137) feet six (6) inches to the Westerly line of Leavenworth Street; thence Southerly along the said Westerly line of Leavenworth Street, one hundred thirty-seven (137) feet six (6) inches.

"4. Now, therefore, the Owner and the Architects, for and in consideration of the mutual covenants and agreements herein contained, agree as follows:

"5. The said Architects agree to perform for the above named work, professional services as stated herein, and the Owner agrees to pay the Architects at the rate of six per cent (6%) upon the cost prices of the buiding as hereinafter set forth.

. . . . . . . . . . . .

"8. Whether the work be executed or whether its execution be suspended or abandoned in part or in whole, payments to the Architects on their fee are to be made as follows: Upon the completion of the preliminary studies, a sum equal to twenty per cent (20%) of the basic rate of six per cent (6%). Upon completion of specifications and general working drawings, exclusive of details, a sum sufficient to increase payments on the fee to 60% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifi-

cations and drawings, or if bids have been received, then computed upon the lowest *bona fide* bid or bids.

. . . . . . . . . . . .

"18. In Witness Whereof, the said parties have executed this agreement the day and year first hereinabove written."

There is no evidence that on December 1, 1925, the exact type of building had been determined on. All agreed that a house of worship was contemplated for the use of each of the said congregations. All else was left to future determination by the duly authorized agents of the interested parties. Mr. Pflueger was a member of one of the associated congregations and also a member of the plaintiff partnership. No fraud is claimed. During the trial there was no claim of corporate double and there is no evidence thereof.

The Society on March 24, 1927, wrote the plaintiffs the contract had been abandoned by the plaintiffs and therefore was abandoned by the Society. More correspondence followed in which the plaintiffs stated that they had not abandoned, etc. Nevertheless, nothing more was done by either under the contract. No building of any kind was built by the defendants. However, another corporation, Leavenworth-McAllister Realty Company, was formed which negotiated a lease to the Linnard Company and then, at a cost of about $1,677,419.69, built the William Taylor Hotel and the church as they now stand on the lot described in the contract in suit.

■ The defendants assert that a judgment was rendered in favor of the plaintiffs and against the principals and their agent and that such a judgment is erroneous. (*Klinger* v. *Modesto Fruit Co.*, 107 Cal. App. 97 [286 Pac. 727]; *McDevitt* v. *Corriea*, 70 Cal. App. 245 [233 Pac. 381]; *Ewing* v. *Hayward*, 50 Cal. App. 708 [195 Pac. 970].) The contention is sound, but no motion was made in the trial court requiring the plaintiffs to elect. The point may not be urged for the first time on appeal. (*Klinger* v. *Modesto Fruit Co., supra.*) True it is that the defendants moved that the case be dismissed as to the Society, but it did not rest with the defendants nor with the trial court to select which defendant the plaintiffs should proceed against. The trial court did not err in denying the motion that was made.

■ It is next contended that the court wrongfully construed the contract. We think it did. No person con-

nected with the transaction was confused as to the meaning of the expression "church building". No one was confused as to who had signed, or who were the parties to the contract. There was nothing to construe. In this connection the defendants object to the large amount of parol evidence introduced by the plaintiffs which brought into the record numerous declarations made prior to December 1, 1925, by numerous members of the different churches as to the opinions of such members as to the kind of a building that should be constructed. That evidence, it may be conceded, was improperly admitted, but it is difficult to see how it was prejudicial, because immediately after December 1, 1925, numerous discussions and debates arose on the same identical subject. Both the plaintiffs, the defendants, and those for whom the defendants were acting participated in those discussions. As will hereinafter appear, such discussions perhaps operated to modify the contract as written. Assuming for the purpose of this decision that they did, as will hereinafter appear, neither the plaintiffs nor the defendants were injured thereby.

As to the instructions that were given, the defendants claim several should not have been given. Many of the attacks are well founded. We will not stop to discuss each one. It will suffice to state that the attacks are but other methods of presenting the points that have been fully treated herein. The same comment may be made on the claim that the trial court refused to give certain other instructions.

■ The next point made by the defendants is that the court erred in excluding certain evidence which they tendered. They offered to prove that Mr. Hobart, the architect of the William Taylor Hotel, never used any of the sketches or plans made by the plaintiffs. The objections of the plaintiffs were sustained. These defendants were not prejudiced. If the defendants, or any of them, had used the sketches or plans a different question would have been presented. But the offered evidence was not addressed to what these defendants received or used.

Finally, it is asserted that the evidence was insufficient to sustain the judgment for the plaintiffs. The point is sound and the record discloses no conflict in the evidence. As we see the facts, the point has three different aspects

which are not necessarily related. ■ (1) If, as the defendants assert, the building of a church building with an adjunct of income-producing property was *ultra vires* the defendant corporations, it does not follow that the defendants are entitled to be wholly discharged. They are liable for the reasonable value of the services rendered by the plaintiffs to the extent that the defendants accepted and now retain the benefits of such services. (6a Cal. Jur. 1282.) However, the record does not show specifically what those benefits were. The contract was terminated so far as the defendants are concerned on the twenty-fourth day of March, 1927. Prior to that date the record discloses that numerous conversations were held, that some sketches, drawings, plans, or models were made, but it does not show what was done prior to that date nor the value thereof.

■ (2) As intimated above, there is evidence that after December 1, 1925, and prior to March 24, 1927, the contract as written was modified by the acts of both parties and that thereafter the contract was terminated. If it was so modified, the liability of the defendants under such circumstances is settled law. (*Naylor* v. *Adams*, 15 Cal. App. 548, 556 [115 Pac. 335].) However, for the reasons just stated, the amount of that liability cannot be ascertained from the record before us. ■ (3) The plaintiffs' complaint contains three counts. The first pleads a written contract according to its legal effect. The second pleads the same contract *in haec verba*. The third sets forth a common count in *quantum meruit*. Allegations are present in each count purporting to plead an unlawful discharge. There was not a particle of evidence that the plaintiffs were wrongfully discharged. The evidence was without conflict that the defendants abandoned the contract. Their act of abandonment operated as a discharge. But in measuring the liability of the defendants there is a great difference between a lawful discharge or abandonment and an unlawful discharge. Paragraph 8 of the contract is as follows: "Whether the work be executed or whether its execution be suspended or abandoned in part or in whole, payments to the Architects on their fee are to be made as follows: Upon the completion of the preliminary studies, a sum equal to twenty per cent (20%) of the basic rate of six per cent (6%). Upon completion of specifications and general work-

ing drawings, exclusive of details, a sum sufficient to increase payments on the fee to 60% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest *bona fide* bid or bids.'' That paragraph reserved to the employer the right to abandon the enterprise and fixed the measure of its liability. When thereafter it exercised its right of abandonment such act on its part was not an unlawful discharge of the plaintiffs. (39 C. J. 72 and 91; 1 Labatt's Master and Servant, 633; *Roberts* v. *Crowley*, 81 Ga. 429 [7 S. E. 740]; *Harder* v. *The Board of Commissioners of Marion County*, 97 Ind. 455; *Douglass* v. *Merchants' Ins. Co.*, 118 N. Y. 484 [7 L. R. A. 822, 23 N. E. 806]; *Leonard* v. *Sparks*, 109 La. 543 [33 South. 594]; *Smith* v. *Douglass*, 4 Daly (N. Y.), 191; *Trumbull* v. *Frey*, 71 Neb. 754 [99 N. W. 648]; *Willis* v. *Rose*, 29 Misc. Rep. 111 [60 N. Y. Supp. 271]; *Egbert* v. *Sun Co.*, 126 Fed. 568, 571.) While the foregoing authorities are applicable to employments generally, the particular rule applicable to architects is the same. That paragraph 8, as quoted, is in legal effect a reservation to the employer of the right to abandon, is clearly supported by the authorities. (*O'Kain* v. *Davis*, 186 Ky. 184 [216 S. W. 354]; *Dittoe* v. *Morgan*, 207 Ky. 267 [268 S. W. 1065]; *Orth* v. *Board of Public Education*, 272 Pa. 411 [116 Atl. 366], and 20 A. L. R. 1352.) ▮ As stated above, that paragraph also fixed the rule for measuring the employer's liability in the event of an abandonment by it. When one of these contracts contains a covenant on the subject it is enforced by the courts as nearly as possible according to its terms. In the case of *Orth* v. *Board of Public Education, supra,* the Supreme Court of Pennsylvania had under consideration a case that was closely parallel in its facts. A written contract was before the court. In one paragraph there was a statement of percentages governing the apportionment of the payments to the architect. In another paragraph there was reserved to the owner the right to terminate the contract. When the bids were received the lowest bid was prohibitory. The enterprise was abandoned. The architects sued for the balance remaining unpaid. There they attempted to recover on the cost as portrayed by the lowest bid. On page 367 of

116 Atl. the court said: "It was also erroneous to estimate the 3 per cent. on the excessive cost, arising out of the unusual conditions prevailing when the bids were received. As already pointed out, 1 per cent. was due when 'the final preliminary study is adopted', and an additional 2 per cent. when 'the working drawings and specifications are completed and adopted'. There was then no other 'cost of the building' except the 'estimates of cost of construction', calculated by plaintiffs themselves, and hence the 3 per cent., if then paid, as the contract provided it should be, necessarily would have had to be computed thereon." The case of *Dittoe* v. *Morgan*, 207 Ky. 267 [268 S. W. 1065], is another case closely parallel in its facts. It involved a business block. The owner was prepared to invest $20,000. The lowest bid was $30,000. On page 1066 the Supreme Court of Kentucky said: "A question arises, upon what amount shall this be based? We think this also reasonably clear. The contract provides that in case the work is abandoned before completion the architects shall be reimbursed for the amount of labor performed prior to such abandonment in accordance with rates established by this contract; 'that until a definite estimate is furnished, the architects' charges shall be based upon the proposed cost of the work'. In this case the work was abandoned and no definite estimate was furnished. The lowest bid cannot be arbitrarily fixed as a definite estimate because it was rejected as being too high. The contract clearly contemplates that under such circumstances the charges shall be based upon the proposed cost of the work. The evidence indicates that this was $20,000, and such was the amount upon which the architects based their first charge.

"Accepting this as a basis, plaintiffs were entitled to recover 4½ per cent. of $20,000, or $900, subject to a credit of $600, and the court should have peremptorily instructed the jury to find a verdict in their favor for $300." As stated by Judge Dallas in the case of *Egbert* v. *Sun Co.*, *supra*, "The corporation had no justification for its termination of the employment of Egbert when and as it terminated it other than that which it derived from the letter of its president, and it cannot be permitted to take a benefit under that letter, and at the same time disown the obligation it imposed. (*McHose* v. *Earnshaw*, 55 Fed. 587 [5

C. C. A. 210].)'' Sustaining the latter proposition, see, also, *Hecht* v. *Brandus*, 4 Misc. Rep. 58 [23 N. Y. Supp. 1004] ; *Caulfield* v. *Yazoo & M. V. R. Co.*, 170 La. 155 [127 South. 585] ; *McGehee* v. *Cunningham*, 181 Ark. 148 [25 S. W. (2d) 449, 451].

When, however, no building has been constructed, there is no cost price and the architect may not base his claim on the lowest bid for that was not the language of the contract. (*Orth* v. *Board of Public Education, supra.*) When the actual cost far exceeds the estimated cost the architect may not claim compensation on the excessive cost for that was brought about by his error. (*Edwards* v. *Hall*, 293 Pa. 97 [141 Atl. 638] ; *Saad* v. *Bates*, 208 Ky. 542 [271 S. W. 568] ; *Headlund* v. *Daniels*, 50 Utah, 381 [167 Pac. 1170].) If the excessive cost is brought about by changes involving extras the rule is altered by reason of the owner's acts. (*Blackhall* v. *Duthie-Strachan*, 258 Mass. 551 [155 N. E. 604].) In the instant case the building was not constructed and there was therefore no cost price. As stated above there was no estimated price. Therefore the courts cannot enforce the covenant contained in paragraph 8 as it is written. Be that as it may, the plaintiffs were entitled to prove by competent witnesses the reasonable value of their services. *Shipman* v. *State*, 42 Wis. 377, is in part closely applicable to the instant case. Shipman, an architect, was employed by the building commissioners to make plans and specifications for a hospital to be located at Oshkosh, Wisconsin. The hospital was to be of the same capacity as the one then located at Madison. It was to be composed of several buildings—an administration building, a north wing, a south wing and some other outbuildings. The commissioners entered into a contract with the plaintiff by the terms of which he was to be paid '' . . . the sum of 5% on the cost of construction''. The first statute appropriated moneys to build one of the buildings; a subsequent statute appropriated moneys to build another building; finally, moneys were appropriated to build the south wing. Before the latter building was commenced the plaintiff was lawfully discharged. Before being discharged he had made plans and specifications for all of the buildings and had superintended the construction of all except the south wing. In suing for compensation he pleaded his contract as to all

except the south wing. As to services rendered in preparing plans on that wing he sued in *quantum meruit*. On page 389 the Supreme Court of Wisconsin says: "The question is, What is he entitled to recover? So far as the contract was executed, there is no difficulty. The plaintiff can recover the contract price for his plans and specifications and services as superintendent up to the time of his discharge. He may further recover the value of his plans and specifications for that portion of the work which he did not superintend, on a *quantum meruit*. His discharge was within the lawful authority of the trustees under chapter 176, Laws of 1872. The contract affords no means or data, it is true, by which the relative value of the plans, etc., as distinguished from the value of superintending the work can be ascertained. If, instead of fixing an entire sum for both services, the contract had stated what was to be paid for all the plans and specifications furnished, and what to be paid as compensation for services as superintendent, the amount of recovery could readily be ascertained. But as it is, the value of the plans, etc., for that part of the work which the plaintiff did not superintend, must be a subject of proof; but in no event would he be permitted to recover more than the contract price for both services." Counsel have not cited to us, and we have not found any authority at variance with the rule as stated by the Supreme Court of Wisconsin.

As stated above, paragraph 8 of the contract clearly contemplated that at the date of the abandonment, if any, by the defendants, the plaintiffs should be compensated for services rendered prior to that date. In their letter of abandonment on March 24, 1927, the defendant Society admitted that liability. The first payment actually payable to the plaintiffs as stated in the contract was " . . . Upon the completion of the preliminary studies. . . . " There is evidence that the preliminary studies were prepared. But except that piece of evidence which will next be discussed, there was no evidence introduced as to the value of the plaintiffs' services. ■ Over the objection of the defendants the court received in evidence the cost of constructing the William Taylor Hotel as it now stands. That building was built by a different corporation. The evidence was *res inter alios*. It should not have been received. In ask-

ing that the evidence be admitted it was claimed that the evidence cast some light on the value to be set on the services rendered by the plaintiffs. But, as we have shown, it was not admissible for that purpose.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 25, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 27, 1932.

Preston, J., dissented.