John McNamara, Appellant, v. The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

1. Appointment by New York Aqueduct Commissioners — Implied Condition. An appointment of an inspector, by the aqueduct commissioners of the city of New York, pursuant to the provisions of chapter 490, Laws of 1883, and its amendments, is subject to the implied condition that when the work gives out his connection with it will terminate.

2. Notice of Discharge. No particular form of words is necessary to effect the discharge of an employee at will. Notice that his services are no longer needed is sufficient.

3. Suspension Equivalent to Discharge. Notice of a suspension without pay until such time as his services might be required, is sufficient to discharge an inspector of masonry appointed by the aqueduct commissioners of the city of New York pursuant to the provisions of chapter 490, Laws of 1883, and the various amendments thereof.

*McNamara* v. *Mayor, etc.*, 84 Hun, 611, affirmed.

(Argued March 4, 1897; decided March 16, 1897.)

Appeal from a judgment of the General Term of the Supreme Court in the first judicial department, entered March 12, 1895, which affirmed a judgment in favor of defendant entered upon a dismissal of the complaint on trial at Circuit.

By this action the plaintiff sought to recover compensation as an inspector of masonry on the new Croton aqueduct for the period of one hundred and sixty-three days at the rate of $120 per month.

The defendant, by its answer, admits the appointment of the plaintiff to said position, at the salary named, but alleges that he was subsequently discharged, and that since then he has performed no services and is entitled to no compensation.

Further facts appear in the opinion.

*John Larkin* for appellant. A cause of action was established. (*Emmitt* v. *Mayor, etc.,* 128 N. Y. 117.) The question of intent and understanding of the parties as to the effect of the letter of suspension was one of fact for the jury. (*White* v. *Hoyt,* 73 N. Y. 505; *Wardlaw* v. *Mayor, etc.,* 137 N. Y. 194.)

*Francis M. Scott* for respondent. The letter of the chief engineer to plaintiff was a discharge or dismissal. (*Wardlaw* v. *Mayor, etc.,* 137 N. Y. 197; *Kelly* v. *Mayor, etc.,* 70 Hun, 208.)

Vann, J. On the eighth of June, 1887, the plaintiff was appointed an inspector of masonry by the aqueduct commissioners, pursuant to the provisions of chapter 490 of the Laws of 1883 and the various amendments thereof. He accepted the appointment, duly qualified and entered upon the discharge of the duties assigned to him. On the fourth of January, 1888, and while he was still filling the position, the commissioners adopted a resolution, and directed the chief engineer to furnish a copy thereof to the "inspectors on the line of the new aqueduct" and others, to the effect that on and after January first "all inspectors employed by the aqueduct commissioners are only to be paid for the time they are on duty on the work." After the passage of this resolution, and on the fifteenth of November, 1888, the plaintiff was notified in writing by the chief engineer as follows, viz.: "Owing to lack of work, as reported by Division Engineer Gowen, you are hereby suspended from November 16th, without pay, until such time as your services may be required."

The plaintiff, who was the only witness sworn upon the trial, testified that, upon receiving this notice, he saw Mr. Gowen, and asked him if there was any chance "to get back," and was informed that perhaps there might be by and by when there would be more work to be done, as repairs were coming on. He saw several of his friends and urged them to use their influence to get him reinstated. He called at the office

of the aqueduct commissioners, and upon the division engineer
and deputy chief engineer in order to see if they would not
re-employ him.   Finally, on the 28th of January, 1889, a
written agreement was entered into between the defendant,
through the aqueduct commissioners, and the plaintiff, which
recited his appointment on the eighth of June, 1887, as an
inspector of masonry, and in consideration of such appoint-
ment he agreed, among other things, that if he should be sus-
pended or discharged for any cause whatever while in the
employ of the commission, his pay as such inspector should
cease, from and after the time of such suspension, subject to
the direction of the aqueduct commissioners.   The defendant,
on its part, agreed to pay the plaintiff the compensation of
$120 for each and every month while he was employed.   On
the 20th of February, 1889, the plaintiff was put to work
again, and he continued to act as inspector until the 14th of
February, 1890, when he was served with a copy of a resolu-
tion adopted by the aqueduct commissioners, stating that upon
the recommendation of the chief engineer his services would
be dispensed with on and after February 15th, 1890.

The evidence upon the trial consisted of the documents
already analyzed, and a very little verbal testimony by the
plaintiff, stating the history of his appointment, "suspension"
and efforts at reinstatement.   At the close of the evidence the
counsel for the defendant moved to dismiss the complaint
upon the ground that no cause of action had been made out
and that the letter or notice of suspension was in fact a notice
of dismissal.   The motion was granted and the exception of
the plaintiff to this ruling is the only one appearing in the
record.   His counsel made no request to go to the jury upon
any question.   The judgment entered dismissing the com-
plaint, upon appeal to the General Term, was duly affirmed,
and the plaintiff now comes here.

The only question presented by this appeal is whether it
was so conclusively proved that the plaintiff was discharged
as to present no question of fact for the jury.

The plaintiff was not appointed to a permanent position,

because the aqueduct commission was not a continuous depart-
ment. It had a special work to do which, in the nature of
things, finally came to a close. When the new reservoir,
dams and aqueduct contemplated by the act of 1883 were
completed, necessarily there was no more work to do and the
inspectors were no longer needed. So, as the work pro-
gressed, there were naturally periods when the services of
fewer inspectors were required than at others. Whenever,
for any reason, there was not enough work for the entire force
employed, it was the duty of the commissioners to reduce the
number accordingly. They had no right to retain a man
when there was nothing for him to do. The resolution of
January 4, 1888, to the effect that inspectors were to be paid
only for the time that they were on duty, was doubtless passed
partly in view of the fact that there was not at all times work
enough for all who had been appointed, and it had the effect of
notice that the inspectors must be prepared to leave as the work
decreased or ceased entirely. It was one of the implied con-
ditions of the appointment of the plaintiff as an inspector
that, when the work gave out, his connection with the work
should terminate. In *Lethbridge* v. *Mayor, etc.* (133 N. Y.
232, 235), the court said, under somewhat similar circum-
stances: " The plaintiff must be deemed to have accepted the
appointment with full notice that his salary was payable
only from a special and designated appropriation, and that
when this appropriation was exhausted his employment should
terminate, in the absence of a new appropriation for the same
purpose. When the commissioner made the appointment, he
evidently had in view the provisions of law which limited his
power to create an obligation against the city beyond or in
excess of the sum specifically appropriated for that purpose,
and the plaintiff must be deemed to have accepted the appoint-
ment with the same understanding and the same limita-
tions. Whenever, therefore, the appropriation from which the
plaintiff's salary was payable was exhausted and the authori-
ties failed to make a new one for the same purpose, the com-
missioner had the right and it was his duty to terminate the

employment, to the end that a liability or obligation should not accrue or be created against the city, in excess of the sum appropriated for the purpose." So, we think that in this case, when the work gave out, the obligation to discharge was imperative, and that the notice served on the plaintiff is to be read in the light of this fact. He necessarily understood that, when there was no more work to be done, the aqueduct commission had no right to retain him in their employment. Hence, when he was informed, on the 15th of November, 1888, that, owing to a lack of work, he was suspended without pay until such time as his services might be required, he had notice that his employment had terminated because there was nothing for him to do. Suspension, under these circumstances, was equivalent to a discharge, because it showed an intention to dismiss. It necessarily conveyed the idea to his mind that his services were no longer required, and that the commissioners could not continue him in their employment because they had no right to do so. The reason given for the so-called suspension was consistent only with an intention to discharge, because, if there was no work to do, there was no right to keep the plaintiff in the employment of the defendant any longer. His acts showed that he so understood it, for his efforts were directed toward learning when there would be more work, and trying to secure an engagement to do it. He did not claim that he had the right to continue at work or to receive pay until long afterward, and if he thought that his pay went on, why did he strive so hard to induce the commissioners to restore him? No particular form of words is necessary to effect a discharge. As the commissioners had the right to discharge at will, notice to an employee that his services were no longer needed was sufficient. While the word "suspend" ordinarily means a temporary cessation, the connection in which it is used may give it a stronger meaning, and when, as in this case, the suspension was accompanied with a reason showing that there was no further right to continue the relation theretofore existing, we regard it as conclusive evidence of the intention to terminate the connection of the plaintiff with the work of the aqueduct

commission.   Suspension without pay because there is no work is a practical discharge.   It was the same as if the commissioners had said to him, " We can't employ you any longer, because we have nothing for you to do."   As was said in *Wardlaw* v. *Mayor etc.* (137 N. Y. 194, 197), if the plaintiff understood " that his services were no longer required   *   *   *   and that compensation was no longer to be paid to him   *   *   * and that such was the purpose of this notice from the commissioner, and both parties acting accordingly, then the *   *   *   notice operated to terminate the employment, though it was called a suspension instead of a dismissal."

This conclusion is not in conflict with our decision in *Emmitt* v. *Mayor, etc.* (128 N. Y. 117) where the facts were quite different.   When the plaintiff in that case was suspended no reason was assigned therefor, and, hence, he had no occasion to regard it as a discharge.   There were no circumstances to give the term " suspend" any other than its ordinary meaning. That was a case of suspension, pure and simple, without any surrounding facts to convert it into a discharge, while in this case no reasonable person could understand that a mere suspension was intended when it was based upon a reason making final action a matter of duty on the part of the commissioners. Under such circumstances no doubt could have been left in the mind of the plaintiff that they desired to terminate his relations with them.   We see no question for a jury, and the judgment should, therefore, be affirmed.

All concur, except Gray and Bartlett, JJ., dissenting.
Judgment affirmed.