### PHELPS v. CONNELLEE. (No. 53.)

(Court of Civil Appeals of Texas. Eastland. Nov. 25, 1925. On Appellee's Motion for Rehearing, Jan. 15, 1926. Appellants' Motion for Rehearing Denied Feb. 4, 1926.)

1. Contracts ☞229(3)—Contractual stipulation of compensation for architect's services held conclusive.

Where contract contains express stipulation as to amount of compensation for architectural services, or manner of determining them, such stipulation is conclusive and measures the amount of recovery for performance, regardless of doubtful inferences from other provisions.

2. Contracts ☞217—Right of discharge or termination of contract does not exist unless stipulated.

Right of arbitrary discharge or termination of contract by one of parties does not exist unless plainly provided in such agreement.

3. Contracts ☞229(3)—Architect could not collect fee for additional work not within terms of contract.

Under architect's contract to plan and supervise construction of hotel building for fee of 5 per cent. computed on "cost of work," defined by the contract as "the contract sums incurred for the execution of the work," where after contract was let architect prepared revised plans increasing cost of hotel by $79,000,

upon which no contract was ever let, he could not recover fee on such additional amount.

**4. Contracts ☞217—Architect could not be discharged under provision allowing work to be "suspended."**

Contract between owner and architect authorizing suspension of work by former did not give him the right, upon temporary cessation of the work, to discharge architect without cause, although "suspend," ordinarily meaning a temporary cessation, may mean permanent discharge of employee, permanent removal from office, discontinue or dispense with.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suspend—Suspension.]

**5. Appeal and error ☞1050(1)—Contracts ☞346(4½)—Evidence of reasonable fee inadmissible in action on contract to recover fee stipulated therein.**

Where architect, working under contract to receive fee of 5 per cent. computed on cost of work, 60 per cent. of which was payable for plans and .40 per cent. as work of supervising progressed, was discharged, his testimony, in action brought to recover balance of fee, that a reasonable fee for plans was 3½ per cent. and for supervision 1¼ per cent., was inadmissible, but being admitted *held* harmless error.

On Motion for Rehearing.

**6. Damages ☞155—Discharged architect need not plead inability to get work elsewhere.**

Where discharged architect brought action to recover fee stipulated in contract, he did not need to plead or prove his inability to get work elsewhere; this being a matter of defense.

**7. Damages ☞124(3)—Discharged architect could recover probable profits, but not fees stipulated in contract.**

Where architect, under contract to receive fee of 5 per cent. computed on cost of work, payable 60 per cent. for plans and 40 per cent. as work of supervision progressed, furnished sufficient plans which were used, but was discharged before completion of building without any fault of his own, *held*, he may recover probable profits. but since he did not do work and was released from responsibility he cannot recover contract price, and amount due him is question for jury.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by H. T. Phelps against C. U. Connellee. From the judgment, both parties appeal. Reversed and remanded.

Turner, Seaberry & Springer, of Eastland, for appellant.

Conner & McRae, of Eastland, for appellee.

PANNILL, C. J. Appellant, an architect, sued appellee for a balance alleged to be due him on a written contract of employment, by which appellant agreed to prepare plans and specifications, working drawings, and de-

tails for and to superintend the construction of two certain buildings in Eastland, Tex., which appellee proposed to erect. One of the proposed buildings was a seven-story and basement hotel building; the other was a fireproof theater building. The appellee, in addition to defensive matters hereinafter noticed, pleaded a cross-action for damages alleged to have been sustained by him on account of appellant's negligence in preparing the plans and specifications for the theater building. The trial was before the court resulting in a judgment in favor of appellant for the sum of $534 and denying appellee any recovery on his cross-action. Both parties have appealed. The portions of the contract, material to this appeal, are as follows:

"The owner agrees to pay the architect at the rate of 5 per cent., hereinafter called the basic rate, computed and payable as stated in the said 'condition.'

"The Architect's Fee.—The fee payable by the owner to the architect for the performance of the above services is the percentage hereinbefore defined as the basic rate, computed upon the cost of the work in respect of which such services have been performed subject, however, to any modification growing out of these conditions or agreement.

"Should the work or any part of it be abandoned or suspended, or should the owner vary the amount of any contract by accepting a credit for the omission or modification of any work covered by it, the architect is to be paid in accordance with the terms of this agreement for the proportion of his service rendered on account of it up to the time of such abandonment, suspension, or acceptance.

"Payments to the architect on his fee are due as his work progresses, in the following order: For general working drawings and details, sixty per cent. of the entire fee, the remainder being due from time to time at completion of work.

"Definition of the Cost of Work.—The words 'the cost of work' as used in article 2 hereof are ordinarily to be interpreted as meaning the total of *the contract sums incurred for the execution of the work*, not including architect's and engineer's fees. (Italics ours.)

"Except as above, neither the owner nor the architect shall assign, sublet or transfer his interest in this agreement without the written consent of the other."

Under the respective pleadings of the parties raising such issues, the court found: That appellant had performed all the services required of him under such contract and had prepared proper plans, specifications, and working drawings for said hotel and theater building, which were submitted to and finally accepted and approved by appellee. That appellee entered into a contract for the construction of both buildings. That the contract price for the erection of the theater was $75,000, and that for the hotel was $268,000, and $2,000 added in the enlargement of the basement. That work was

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

begun upon said hotel building and had progressed to a point where the sum of $22,000 had been spent thereon and the project abandoned. The construction of the theater was also begun and work involving an expenditure of $12,200 had been done, when appellant was discharged, another architect employed who revised appellant's plans, and the theater building was completed at a total cost as stated. That the theater building was constructed substantially in accordance with the plans, specifications, and working drawings prepared by appellant and which had been accepted by appellee. That the plans for both buildings were complete, definite, and sufficient to properly carry on and construct both of said buildings and in accordance with approved engineering principles. That at the time appellee discharged appellant and employed other architects, the appellee acted in good faith. That appellee had not been damaged in any amount by reason of the allegations in his cross-action against appellant. The court construed the portions of the contract above set forth to authorize appellee to discharge appellant provided that appellee was at such time acting in good faith. The trial court concluded the contract bound appellee to pay to appellant 3 per cent. of the contract price for the erection of both buildings and 2 per cent. additional upon the amount actually expended in the construction thereof up to the time of appellant's discharge.

After the contract was let for the hotel building, according to appellant's contention, appellee made certain alterations therein for which appellant prepared revised plans and specifications and upon which bids were received, increasing the cost of the hotel building by $79,000 approximately, but for such additional work upon said hotel no contract was ever let by appellee, the same consisting of revised plumbing and bath fixtures and heating plant, and appellant seeks an additional judgment for 5 per cent. of said items aggregating $79,000 and 2 per cent. of the amount expended for the completion of the theater building after appellant was discharged, which amount was approximately $63,000.

The appellee contends that a proper construction of said contract is that appellant should receive 5 per cent. of the amount actually expended on said buildings under appellant's supervision, and that his total fee was approximately $1,700, and seeks to recover the difference between that sum and the sum of $10,500 paid by appellee before suit.

There seems to be no dispute between the parties as to what the rules of law are with respect to the controversy, but they differ materially in the application thereof. An exhaustive review of authorities relating to the matter of the construction of architect's contracts for compensation is found in Orth v. Board of Public Education, 272 Pa. 411, 116 A. 366, 20 A. L. R. page 1352, and annotations thereunder, page 1356.

[1] The rule is the same, of course, with reference to such contracts as all others, and that is:

"As a general rule where the contract contains an express stipulation as to the amount of compensation for architectural services, or the manner of determining same, such stipulation is conclusive and measures the amount of recovery for performance regardless of doubtful inferences from other provisions."

[2] It is, of course, elementary that the right of arbitrary discharge or termination of contract by one of the parties does not exist unless plainly provided for in such agreement.

[3] It appears that appellant cannot recover for the increased estimated cost of the hotel building as contended here, because the contract clearly limits the amount due appellant to 5 per cent., to be computed upon the cost of the work, and "cost of the work" is further defined as meaning, "the total of the contract sums incurred for the execution of work not including architect's and engineers' fees," so that regardless of the question as to whether appellee ever authorized the additional plans and specifications for increased plumbing and bathing fixtures and heating apparatus, which would have increased the amount by $79,000, and regardless of the question as to whether bids were ever advertised for such matters, it appears that appellee did not enter into any contract therefor, and, therefore, did not become liable to appellant for any sum based thereon. O'Kain v. Davis, 186 Ky. 184, 216 S. W. 354.

[4] This brings us to the question as to appellee's right to discharge appellant without cause and arbitrarily terminate the contract. This right is asserted under the quoted provision authorizing the suspension of the work.

"Suspend" ordinarily means temporary cessation, but the connection in which it is used often gives it a stronger meaning; hence, it may mean a permanent discharge of an employee, McNamara v. City of New York, 152 N. Y. 228, 46 N. E. 507, or to discontinue, as in Reeside v. U. S., 75 U. S. (8 Wall.) 38, 19 L. Ed. 318, or to "dispense with," as in statutes requiring a certain vote to suspend the rules in legislative proceedings, Town of Bayard v. Baker, 76 Iowa, 220, 40 N. W. 818, or a permanent removal from office, as in Nolen v. State, 118 Ala. 154, 24 So. 251. It is concluded that the temporary cessation of the work did not under the court's findings give appellee the right of discharge. The agreement as quoted providing that the architect's rate of 5 per cent. "is to be computed and payable as follows," and subsequently providing for 60 per cent. of such fee to be payable for plans, and 40 per cent. as

the work progresses, certainly renders the payments divisible.

It appearing from the court's findings that the plans and specifications furnished by appellant were sufficient and were used by appellee in the construction of said theater building, and that appellant was discharged by appellee without any fault or negligence upon appellant's part and that appellant was at all times ready, willing, and able to perform his part of said agreement, it is believed that appellant was entitled to recover 5 per cent. of the total cost of the theater building and that the court should not have denied him a recovery of 2 per cent. of the amount expended in the construction of said theater building after appellant was discharged. What has been said above, of course, disposes of appellee's contention both as to the amount appellant should recover and as to his cross-action.

[5] Appellee seriously contends that the reversible error was committed in admission of appellant's testimony to the effect that a reasonable fee for the services performed by him was 3½ per cent. of the total price for the construction, for the preparation of the plans and specifications, and 1¼ per cent. for the superintendence of the construction of the buildings. We agree with appellee that this testimony was not admissible, but do not believe its admission should reverse the case; such testimony evidently did not enter into the trial court's judgment, and has not been considered here in determining the issues made on the appeal. Should the case be remanded, instructions as to the judgment to be entered would naturally follow, and the matter could only affect the question of cost, and inasmuch as the court gave appellant insufficient relief, he is entitled to his costs.

From what has been said, it follows that the total compensation due appellant under the contract was $12,290, instead of $11,034, as found by the trial court, and that the amount which should have been recovered by appellant was the sum of $1,790, instead of $534.

It therefore follows that the judgment of the trial court should be reformed so that, instead of allowing appellant a recovery of $534 as was done, appellant should recover of and from appellee the sum of $1,790, together with all costs both in the trial court and in this court, and that the judgment of the trial court should be so reformed, and as so reformed, it is affirmed.

On Motion for Rehearing.

The construction of the contract between appellant and appellee as made is adhered to. For the reason stated in the original opinion in disallowing appellant's claim of 5 per cent. on item of $79,000 for plumbing, bath fixtures, and power plant, we must overrule his contention in that respect. No evidence has been cited by appellant showing any liability incurred by appellee for such matters.

Appellee's motion reiterates the points presented and disposed of originally, except the one discussed in the next succeeding paragraph. No contention is made by appellee that the contract for the erection of the hotel did not bind appellee to expend the sum as found by the court, and therefore the sum estimated to be the price of the hotel was not incurred by the appellee. This contract is not found in the record, but the one for the erection of the theater is asserted to be the same, except as to amounts. The latter is what is usually called "a cost plus agreement." No request had been made by the appellee for its construction with a view to determine whether it binds appellee to expend the amount stated in it so as to come within the definition "cost of work" referred to. Hence no opinion is expressed thereon.

[6] Appellee makes a point in his motion for rehearing that we were in error in reforming the judgment so as to allow appellee a recovery of $1,246 on the item of $62,300 expended in the construction of the theater building after appellant's discharge, claiming that this court applied an incorrect measure of damage, in that appellant did not plead nor prove that he could have saved himself from the consequences of the default of appellee by obtaining work elsewhere. There is no merit in this contention, as the authorities hold that this is a matter of defense and must at least be raised and the issue tendered by the defendant on the trial. Some of the authorities hold that the defendant must plead such issue.

[7] It has been concluded, however, that we were in error in awarding appellant a recovery for said sum, as the rule seems to be in such cases that while the complaining party may recover the natural and probable profits the contract would have yielded, when they are certain and not contingent, but he must not receive when the work is not done the same amount of money he would have received had the contract been fully executed, and it has been held that a further deduction should be made for the less time engaged and for release from care, trouble, risk, and responsibility attending a full execution of the contract. Porter v. Burkett, 65 Tex. 383.

What amount should be allowed in such case is a question for the trial court or jury, as the case may be, and cannot be determined here. Being of the opinion that appellant is entitled to recover some damage on said item of $1,246 under the issues as presented on this appeal, the appellant's motion is overruled, and for the reason indicated appellee's motion for rehearing is granted in part. The judgment of the trial court is reversed and the cause remanded.