**EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. LAROCCO.**

**No. 5223.**

Circuit Court of Appeals, Third Circuit.

Dec. 28, 1933.

B. J. Jarrett, Karl W. Warmcastle, and McCook & Jarrett, all of Pittsburgh, Pa., for appellant.

Julius L. Schoenberg, Joseph A. Rossi, and Rossi & Schoenberg, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Tony Larocco, husband of the plaintiff, had been employed by the Pittsburgh Screw & Bolt Corporation. That concern had taken out two policies of group life insurance with the defendant insurance company; one, a gratuity between itself and its employees, was a non-contributory policy, that is, a policy whereunder the premiums were paid by the Screw & Bolt Corporation wholly from its own funds; the other, a contributory policy, whereunder the premiums, though formally paid by the Screw & Bolt Corporation, were made up of moneys partly contributed by the Corporation and partly by its employees in the form of deductions from their wages. Larocco held certificates of participation in both policies with his wife named as beneficiary.

On September 22, 1930, Larocco's employment with the Screw & Bolt Corporation (hereinafter referred to as the employer) terminated, whether permanently or temporarily was a question. Business being bad, the employer had no further work for him. Accordingly, he was given a green slip on which were the words: "Laid off until further notice." Early in October he received the balance of his pay for September work, no deduction being made from his pay envelope for October insurance premium under the contributory policy. Larocco died on October 20. His widow sued the defendant insurance company for her husband's share of the group insurance and recovered under a directed verdict on both policies. The defendant appealed.

The plaintiff's right to recover rests entirely on the terms of the contracts of insurance which the employer made with the defendant on the life of her husband as an employee. There is nothing in the group insurance policies which obligated the employer to continue the employee in its employ, or to continue the employee's insurance. And, similarly, the employee assumed no responsibility for payment of premiums and no liability for their non-payment. The contracts of insurance are solely between the employer and the insurance company and the right of an employee's beneficiary to obtain by suit the benefits for his death depends on the

terms of the policies and the action of the contracting parties thereunder.

Each policy contains a provision (italics ours) that insurance "upon the life of any employee covered by this contract shall automatically cease and determine upon the termination of such person's employment with the Employer * * * *except* that the Employer may *elect* that all employees who while insured hereunder are *temporarily laid off* * * * shall be *considered* to be in the employment of the Employer during such period," and therefore covered by the insurance. This is a clear right accorded to or reserved by the employer to elect to continue in force the insurance of a laid-off employee and constitutes an exception to the general provision that insurance shall cease with the termination of employment. The exercise of this right of election turns on the employer's wish or mental attitude—"shall be *considered* (by him) to be in (his) employment"—against the fact that the employee had ceased work and actually was not in his employ.

At the trial the question was whether the case falls within the exception to the general provisions of the policies. That depends, of course, on whether the employer elected to come within the exceptions, and its election depends, in fact, on what it did, or on what it failed to do. There were no primary facts in dispute. Among the several undisputed facts are these important ones: In September, Larocco was "Laid off until further notice." At that time his actual employment ceased. Thereafter he did no work and received no wages. The insurance premium which the employer paid the defendant-insurer for October did not include insurance coverage upon his life on either the contributory or non-contributory policy. With these facts before him both parties moved the learned trial judge for a directed verdict in their favor respectively. That brought into operation the rule of Beuttell v. Magone, 157 U. S. 154, 157, 158, 15 S. Ct. 566, 567, 39 L. Ed. 654, applied in Williams v. Vreeland (C. C. A.) 244 F. 346, which provides that: "As, however, both parties asked the court to instruct a verdict, both affirmed that there was no disputed question of fact which could operate to deflect or control the question of law. This was necessarily a request that the court find the facts [in this case, find whether Larocco was an employee 'temporarily laid off' and 'considered' by his employer as still in its 'employment' and whether, accordingly, he was covered by the policies of insurance at the time of his death], and the parties are, therefore, con-cluded by the finding made by the court, upon which the resulting instruction of law was given. The facts having been thus submitted to the court, we are limited, in reviewing its action, to the consideration of the correctness of the finding on the law, and must affirm if there be any evidence in support thereof."

Now there is evidence with respect to these two policies from which it might be found that the employer made no election under the exception but stood on the general provision that insurance ceases when employment ends. This is the evidence of the green slip with the words "Laid off until further notice." This expression, standing alone, could not be construed as continuing the employment on which continuance of the insurance depended. Standing alone, it severed the relation of employer and employee and was in practical effect, and we think in legal effect, a discharge. McNamara v. New York, 152 N. Y. 228, 46 N. E. 507; Wardlaw v. New York, 137 N. Y. 194, 33 N. E. 140; Wheeler v. Monsanto Chemical Works (Mo. App.) 263 S. W. 881; Gibney v. Equitable Life Assurance Society (Common Pleas of Beaver County, Pa.) 13 Dist. & Co. Rep. 119. The other evidence is the fact that the employer did not pay the premium for Larocco on the non-contributory policy and did not collect from Larocco his share of the premium and did not pay anything itself on the contributory policy for October, the month in which Larocco died. The life of the policies and of the employee's participating certificates depended on payment of premiums by the employer. If that were all there is in the case, the court, acting upon the two motions for directed verdicts, would have committed error if it had directed a verdict for the plaintiff because within the rule laid down in Beuttell v. Magone there would have been no evidence to support it. But just here entered other evidence which changed the aspect of the case.

On October 27, 1930, seven days after Larocco's death, the employer addressed a letter to him with this heading (italics ours): "Notice of *intended* cancellation insurance policy No. 1789–323, Equitable Life Assurance Society." That number refers to Larocco's participating certificate in the non-contributory policy. Then the company said: "*Unless* we have written information accompanied by a doctor's certificate stating that you are unable to follow *your employment* on account of sickness, *the above-named policy* will be *cancelled* as from October 31st., *next.*"

The defendant-insurer says this letter was sent by mistake and signifies nothing. The

court's finding otherwise is conclusive. The plaintiff says that it is evidence that Larocco was "temporarily laid off" within the exception of the provision and that the insurance under both policies was in force at the time of his death. We think the letter may be taken as evidence of a previous election by the employer to "consider" the employee in its continued employment, though temporarily laid off, and evidence strong enough for the court validly to take into consideration with reference to the expression of dismissal— "Laid off until further notice." When the latter expression is read in connection with the letter of October 27 it is a permissible inference that the employer still had Larocco on its roll as a "temporarily laid off" employee with insurance in force, subject to a qualification to be made presently. The letter, open to an inference either way, constitutes evidence in support of the judge's finding of fact and direction of verdict under the Beuttell-Magone rule with respect at least to the non-contributory policy. It was in respect to that policy and to that policy alone that the damaging letter was written. And we think, as the judge was asked by both parties to interpret it, the letter was enough to sustain his finding of the ultimate fact of Larocco's status of employment with respect to the non-contributory policy at the date of his death on the dual motions for directed verdicts.

But participating certificates had been issued to Larocco under both master policies, and the beneficiary has sued on both. The damaging letter, setting up a possible temporary lay-off, referred only to one policy— the non-contributory policy. As to the contributory policy there was no such letter, and otherwise no enlightening evidence bearing on the status of the employee after he was laid off. Under the contributory policy Larocco was neither asked to contribute nor did he contribute to the premium for the month of October, nor did the employer pay the premium for him. Nor, as to the contributory policy, was there any evidence to indicate anything other than that he was laid off, not temporarily within the meaning of the exception, but indefinitely and until such time, if ever, as the employer should choose to re-employ him. In other words, the evidence as to that policy indicates a complete severance of the relation of employer and employee. Therefore, we are constrained to hold in this suit on that policy there was no evidence under the rule of Beuttell v. Magone to sustain direction of a verdict in the plaintiff's favor for the amount of *the contributory policy*. It may be said that evidence which proves that Larocco was an employee temporarily laid off under one policy is evidence that he was an employee temporarily laid off under the other, but that is not sound when it is remembered that his beneficiary is suing on two policies, each conferring upon the employer a right to "elect" and to "consider" an employee not actively at work as an employee, though "temporarily laid off," still in its employ with insurance in force.

This suit being on certificates under the two policies, the case must be tried and decided on the clause in each policy which, as an exception to the general rule, gives the employer the right of election and on evidence of its election in each instance. We find there was evidence (the letter) which sustains the finding of the learned trial judge that the employer, resorting to the exception, elected in favor of Larocco with respect to the non-contributory policy, but stood on the general provision, whereby insurance ends when employment ends, in respect to the contributory policy. This may seem an odd thing for an employer to do, yet, being free to do it, if there is evidence that he did it, the legal consequences of his opposite acts fall separately in their proper places. The only thing that saved the plaintiff at all was the employer's letter of October 27 and it saved her only as to the non-contributory policy. That letter (open to two views) supports the way the learned trial judge looked at it and sustains his finding of Larocco's employment (so "considered" by the employer) as a fact on the non-contributory policy but does not support his like finding on the contributory policy. With the letter out of the way, there is no evidence to sustain a finding of employment or of the employer's election to consider Larocco temporarily laid off with insurance in force and none to support a verdict on the contributory policy.

The judgment of the District Court is reversed with costs of appeal against the plaintiff and a new trial awarded on both policies conformable with this opinion, unless the plaintiff enter a remittitur as to the amount of the verdict on the contributory policy. If the plaintiff should enter a remittitur as indicated and the judgment thereby be reduced to the principal amount and interest due on the non-contributory policy, it will be affirmed, with costs of appeal to be assessed equally between the parties.